# EXHIBIT 4

Enclosures

## SUBCONTRACT

This subcontract is by and between **Wiregrass Construction Company, Inc.**, ("Contractor") with offices at P.O. Box 48, Ariton, AL 36311 (mailing address) and

<u>DAVID BULGER INC.</u> ("Subcontractor") with offices at <u>MONTGOMERY, ALABAMA</u>.

### CONTRACTOR AND SUBCONTRACTOR PROMISE AND AGREE AS FOLLOWS:

Subcontractor shall procure and furnish all materials, labor, supervision, equipment, facilities, supplies, licenses, and permits necessary to perform all work set forth below in the construction of **PROJECT NO. STPQA-4404(200)** located at <u>MACON</u> County, Alabama for Contractor and owned by the **ALABAMA DEPARTMENT OF TRANSPORTATION**, in strict accordance with this Subcontract and the contract between the Owner and Contractor, including all plans, schedules, drawings, specifications and other documents forming or made part of said contract, all of which Subcontractor acknowledges it had reviewed to its satisfaction. Contractor makes no representation of warranty, express or implied, regarding the adequacy or accuracy of the Contract. This Subcontract is made conditional upon its approval by the Owner, if such approval is required.

1. **SCOPE OF WORK:** (a) Subcontractor shall perform and pay for the following work and all incidental work necessary to complete it ("work"), according to Contractor's schedule, which Contractor may reasonably change at any time during construction of the Project:

| ITEM NO. | DESCRIPTION | UNIT | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 424A336 | HAULING HOT MIX ASPHALT (P) | HOUR | 1 | $50.00 | $50.00 |
| 424A347 | HAULING HOT MIX ASPHALT (P) | HOUR | 1 | $50.00 | $50.00 |
| 424B647 | HAULING HOT MIX ASPHALT (P) | HOUR | 1 | $50.00 | $50.00 |
| | | | | | $150.00 |

(b) Quantities are estimates only, and payment shall be based upon the actual quantities of Work performed at the specified unit prices as accepted and paid for by Owner, unless the words "lump sum" appear below the Estimated Amount for an Item of Work.

(c) All applicable taxes are included in the price(s).

(d) Contractor shall have the same rights and privileges as against the Subcontractor herein as the Owner in the General Contract has against Contractor.

(e) Subcontractor shall make all alterations, furnish the material for and perform all extra work or omit any work Owner or Architect and/or the Engineer in charge may require, without nullifying this agreement, at a reasonable addition to, or reduction from, the subcontract price, herein named, and pr rate to the same, or under a Force Account agreement as outlined in the contract specifications when required to do so by the Owner. No changes are to be made, however, except upon written order from Contractor, and Contractor shall not be held liable to Subcontractor fro any extra labor, material, or equipment furnished without such written order. The amount to be paid by Contractor, or allowed by Subcontractor, by virtue of same, shall be stated in such order, if the amount can be agreed upon, but if not, then it shall be fixed by arbitration as provided in Paragraph 22, but meanwhile the work shall proceed as directed.

2. **INVESTIGATION OF PROJECT:** (a) Subcontractor has fully acquainted itself with and hereby agrees to be responsible for all physical and non-physical conditions relevant to the Work, the Project site and surroundings. Subcontractor acknowledges that he/she has read the General Contract and all plans and specifications and is familiar therewith and agrees to comply with and perform all provisions thereof applicable to Subcontractor.

(b) All work shall be done under the direction of the Architect and/or the Engineer in Charge, and his/her decisions as to the true construction and meaning of the drawings and specifications shall be final.

(c) Subcontractor shall conform to an abide by any additional specifications, drawings or explanations furnished by the Architect and/or the Engineer in Charge to illustrate the work to be done.

(d) Subcontractor shall procure at his/her own expense all required permits and licenses.

(e) Subcontractor assumes the risk of any variances between actual conditions and any conditions represented in the Contract or this Subcontract, including but not limited to subsurface conditions, prior work performed by other parties, and the proper removal and disposal of waste materials and contaminants. Subcontractor shall immediately notify Contractor if any hazardous material or condition is encountered on the Project.

3. **EXECUTION AND PROGRESS OF THE WORK:** (a) Time is of the essence for this Subcontract. Subcontractor shall make all necessary arrangements and coordinate its Work with the Contractor, other subcontractors and the Owner's forces so as not to delay or impair the progress of the Work or the work of others on the Project.

(b) Subcontractor shall begin work as soon as instructed by Contractor, and shall carry on said work promptly, efficiently, and at a speed that will not cause delay in the progress of Contractor's work or other branches of the work carried on by other Subcontractors.

(c) Subcontractor shall protect the Work with the necessary lights, barriers, supports, barricades and warning devices, and shall keep the Work area clean at the end of each shift. Subcontractor shall remove from the premises, as often as directed by the Contractor, all rubbish and surplus material which may accumulate from the prosecution of said work. Should Subcontractor fail to do so, Contractor may at his/her option remove same at Subcontractor's expense.

(d) Subcontractor shall provide safe and sufficient facilities at all times for inspection of the work by Contractor, the Architect and/or the Engineer in Charge, or their authorized representatives and shall within twenty-four (24) hours after receiving notice from Contractor proceed promptly to take down all portions of the work and remove from the grounds and buildings all material, whether worked or unworked, which the Architect and/or the Engineer in Charge shall condemn or fail to approve, and shall promptly make good all such work, and all other work damaged or destroyed in removing or making good said condemned work.

(e) Subcontractor shall at all times supply adequate tools, appliances and equipment, a sufficient number of properly skilled workmen and a sufficient amount of materials and supplies of proper quality to efficiently and promptly prosecute said work and shall promptly pay for all material purchased and shall pay all workmen and furnish Contractor with proof of payment and shall also supply Contractor weekly with six copies of certified payrolls verified by affidavit, if required by the Contractor or contract specifications.

(f) To secure performance by Subcontractor, and any funds expended by Contractor hereunder, Contractor shall have a lien upon all materials, tools, appliances and equipment of the Subcontractor on the premises or used in connection with said work. Subcontractor shall execute such other documents as Contractor reasonably requests to more adequately secure and perfect this lien.

(g) Subcontractor's representative on the job shall at all times have the absolute authority to act in all respects on behalf of Subcontractor.

(h) Subcontractor shall turn said work over to Contractor in good condition and free and clear of all claims, encumbrances or liens and shall protect and save harmless Contractor and Owner from all claims, encumbrances and liens growing out of the performance of this Subcontract, and Subcontractor will at his own cost and expense (including attorney's fees) defend all suits to establish such claims, and pay any such claim or lien so established.

(i) Subcontractor shall, as often as required by the Owner or by Contractor, furnish a sworn statement showing all parties who furnish labor or materials to Subcontractor, with their names and addresses and the amount due or to become due each. Like statement may be required from any Subcontractors of the Subcontractor.

(j) Subcontractor is bound and liable to Contract, as Contractor is bound and liable to Owner under the Contract. Contractor may require the Subcontractor to prosecute in preference to other parts of the work such part or parts as Contractor may specify. Subcontractor agrees that the Contractor will have the sole authority to reject unacceptable Work and any supportable decision by Contractor on any aspect of the Work shall be final.

(k) Subcontractor shall, when requested by Contractor, furnish Contractor a written list of the names of all subcontractors, suppliers and any other entities that may furnish labor or materials on the Work.

(l) Any damages for delay caused by Subcontractor shall be deducted by Contractor from the agreed price for said work as liquidated damages and not as a penalty, subject, however, to the option of Contractor to terminate said employment for default as herein elsewhere provided. Such deduction may be made from any draw request thereafter made.

4. **PAYMENT:** (a) Subcontractor shall submit a detailed monthly invoice on or before the 10th of each month for Work performed the previous month. Subcontractor shall also, when required by Contractor, submit affidavits, on forms satisfactory to Contractor, with each monthly invoice acknowledging that all labor, materials, equipment, fuel, and other items utilized in the Work covered by such invoice have been fully paid. If proof cannot be furnished, progress payments may be withheld or joint checks can be written by Contractor to pay for these items directly.

(b) Contractor shall pay Subcontractor progress payments within 30 days of receipt of corresponding progress payments from Owner, based on quantities of Work performed as approved by Contractor and Owner; provided, however, that no payment otherwise owed shall by payable unless Subcontractor has provided.

(i) current insurance certificate as provided in Paragraph 5 below and
(ii) bonds as provided in Paragraph 18 below.

(c) Contractor will withhold from each progress payment either

(i) 0 % retainage or
(ii) the amount pertaining to the Work withheld by Owner from Contractor, whichever is greater, up to a maximum amount of $_____.
(iii) Further, Contractor my withhold payments, if in Contractor's reasonable business judgment, the cost to complete Subcontractor's remaining work is greater than the amount of retainage plus the remaining sums due to Subcontractor under this agreement.

(d) Any damages for delay caused by Subcontractor shall be deducted by Contractor from the agreed price for said work as
liquidated damages and not as a penalty; subject, however, to the option of Contractor to terminate said employment for default as herein elsewhere provided (See paragraph 16).

(e) Final payment is payable 30 days after final acceptance of the Project and receipt of final payment from Owner by
Contractor. Subcontractor shall bear the risk of nonpayment by the Owner, and in no event shall Contractor be responsible to make any payment to Subcontractor unless and until payment for that potion of the Work is actually received by Contractor from Owner. Prior to final payment, Subcontractor shall give Contractor satisfactory evidence that the Project is free of all claims chargeable to the Project or Contractor's bond. Contractor reserves the right

(i) to withhold payment from Subcontractor to satisfy liens against the Owner's property, or any actual or potential claims by Contractor against Subcontractor or by others against Contractor or Contractor's bond,
(ii) to issue joint checks, payable to Subcontractor and any potential claimant, and
(iii) to pay any such claimant directly for Work or materials supplied in performance of the Work. No payment shall operate as an acceptance of the Work performed or materials furnished.

5. **INSURANCE:** Subcontractor (and each of its subcontractors) shall maintain

(a) **WORKERS"S COMPENSATION** insurance to fully protect against loss from personal injury, including death, to
any of their employees

| Workers' Compensation | Statutory |
|---|---|
| Employers Liability | $ 100,000 Each Accident |
| | $ 500,000 (Disease – Policy Limit) |
| | $ 500,000 (Disease – Each Employee) |

Subcontractor shall waive right of subrogation against Owner and Contractor

(b)**COMMERCIAL LIABLITY AND PROPERTY DAMAGE INSURANCE**, written by insurers acceptable to Contractor, having minimum coverage of $1,000,000 combined single limit.

Commercial General Liability
On an occurrence basis    $1,000,000 Each Occurrence

Bodily Injury &
Property Damage    $2,000,000 General Aggregate Per Project
$2,000,000 Products – Completed Operations Aggregate

The Contractor and Owner shall be named as **ADDITIONAL INSUREDS** on the Subcontractor's policies for this project. The Subcontractor's policy shall be endorsed to specify that his/her insurance will be primary insurance for the Contractor and Owner that have been named as **ADDITIONAL INSUREDS**.

The policy shall provide the following coverages: Premises/Operations, Products/Completed Operations, Contractor's Protective, Contractual, personal injury, Broad Form Property Damage, Explosion, Collapse and Underground.

Products/Completed Operations shall be maintained for not less than one year after acceptance of completed work.

(c) **AUTOMOBILE LIABILITY:**

Combined single limit bodily injury, property damage – $1,000,000
Owned Autos, hired Autos, Non-Owned Autos.

Contractor and Owner shall be named as **ADDITIONAL INSUREDS** under this policy and shall be primary insurance for Contractor and Owner.

(d) **UMBRELLA AND/OR EXCESS LIABILITY POLICY:**

The limits specified above may be attained by individuals policies or by a combination of underlying policies with Umbrella and/or Excess Liability policies.

All insurance shall be written on an "occurrence" basis and not on a "claims made" basis. All policies, except for employer's liability policies, shall name the Contractor as an additional insured with primary coverage (with any other third-party coverage provided for Contractor to be deemed as excess only) and shall indemnify, defend and protect Contractor from all claims, expenses and liabilities in any way connected with any act or omission of Subcontractor, its invitees, or any person performing Work directly or indirectly on behalf of Subcontractor, regardless of whether Contractor is wholly or partially at fault. All insurance shall expressly provide that all rights of subrogation against the Contractor and the Owner are waived.

(e) Subcontractor shall furnish Contractor with certificates evidencing the above Insurance prior to the commencement of any work. The Certificate of Insurance shall be on ACORD Form and shall indicate the coverage above as specified. The failure of Subcontractor to supply such certificates or any payment by Contractor prior to receipt of certificates shall not diminish Subcontractor's duty to maintain the required insurance. No amendment, cancellation, or non-renewal of any policy shall be effective until 30 days' written notice to Contractor. The words "ENDEAVOR TO" and "BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENT OR REPRESENTATIVES" shall be removed.

6. **INDEMNITY:** To the fullest extent permitted by law Subcontractor shall defend, indemnify and hold harmless Contractor from any and all losses, consequential damages, expenses (including but not limited to attorneys' and consultants' and experts' fees), claims, suits, liabilities, fines, penalties, and remedial or clean-up costs arising out of or in any way related to

(i) the performance of the Work,
(ii) any breach of this Subcontract by Subcontractor, or
(iii) any act or omission by Subcontractor, its invites, or any person performing Work directly or indirectly on behalf of Subcontractor regardless of whether Contractor is wholly or partially at fault, but only to the extent cause in whole or in part by negligent acts or omissions of the Subcontractor, anyone directly or indirectly employed by them or anyone for whole acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party of person described herein. Subcontractor's indemnification obligations shall not be limited by any other paragraph herein, or by any limitation on the amount or type of damages, compensation or benefits payable by of for the Subcontractor under Worker's Compensation Acts, Longshoremen and Harborworker's Acts, or any other employee benefit laws. Any damages recoverable by Contractor from Subcontractor shall bear interest at the annual rate of 18% or the highest rate allowed by law, whichever is lower. One percent (1%) of the total Subcontract price represents specific consideration for the obligations assumed by Subcontractor under the above indemnity provisions.

7. **CHANGES/EXTRA WORK:** Changes and extra in the Work and its scheduling may be made only upon duly authorized written order by Contractor to Subcontractor, with any changes in the Subcontract price or time to be agreed upon in writing by the parties; and if such agreement cannot be reached, Subcontractor shall nevertheless proceed with the Work under a Force Account agreement when called for by Contract specifications or may submit a claim pursuant to Paragraph 17 below, for any increased costs so incurred.

8. **TRUST FUNDS:** No monies owed to Subcontractor hereunder are to be deemed the property of Subcontractor unless and until Contractor has no claim whatsoever against Subcontractor under the terms of this Subcontract; and all monies paid to Subcontractor shall be held in trust for the payment of all labor and materials furnished in the performance of the Work before using any portion of said monies for any other purposes whatsoever.

9. **DELAY:** (a) No extension of time shall be allowed unless Subcontractor submits a written request to contractor within forty-eight (48) hours after the justifiable cause thereof occurs, and then only if and to the extent approved by Contractor and Owner. No damages or additional compensation shall be granted to Subcontractor for any delay, interference, disruption, or hindrance that Subcontractor may encounter in performing the Work.

(b) Contractor shall not be liable to the Subcontractor for delay to Subcontractor's work by the act, neglect or default of the Owner, or the Architect and/or the Engineer in Charge, or by reason of fire or other casualty, or on account of riots, or of strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause, beyond Contractor's control, or on account of any circumstances caused or contributed to by the Subcontractor; but Contractor will cooperate with Subcontractor to enforce any just claim against the Owner or Architect and/or the Engineer in Charge for delay.

(c) Should Subcontractor be delayed in his/her work by Contractor, then Contractor shall owe Subcontractor therefore only an extension of time for completion equal to the delay caused and then only if a written claim for delay is made to Contractor within forty-eight (48) hours from the time of the beginning of the delay.

10. **INDEPENDENT CONTRACTOR:** Subcontractor agrees that it is, and will remain throughout the life of this Subcontract, an independent contractor and employing unit subject to all applicable tax, unemployment compensation, and worker's compensation statutes so as to relive the Contractor of any responsibility or liability for treating Subcontractor' employees of the Contractor.

11. **DISADVANTAGED BUSINESS ENTERPRISE:** If Subcontractor is to perform as a Disadvantaged, Minority or Woman-Owned Business Enterprise ("DBE"), Subcontractor

(i) agrees that all Work required by this Subcontract will be performed, managed and supervised by Subcontractor's own forces, except for Work sub-subcontracted to others with Contractor's prior written consent, and

(ii) shall do all things necessary to comply with all applicable federal, state or municipal laws, rules, regulations or ordinances governing the Subcontractor's performance and continuing certification as a DBE so that its performance will count toward Contractor's DBE requirements in the Contract. Contractor may terminate this Subcontract and deduct damages incurred by Subcontractor due to termination, if Subcontractor is decertified as a DBE, or if for any reason Owner refuses to count any portion of this Subcontract toward the DBE requirement in the Contract.

12. **WARRANTY:** Subcontractor shall provide all warranties with regard to the Work as required in the Contract; however, in no event shall such warranties extend for less than one year from the final completion date of the Project, and Subcontractor will replace defective material or workmanship in the Work which may occur or develop prior to Contractor's final release from responsibility to Owner.

13. **COMPLIANCE WITH LAW:** (a) Subcontractor, at its own expense, shall comply with all applicable local, state and federal laws, rules, regulations and ordinances, including but not limited to wage and hour, drug-free workplace, safety, health and environmental laws.

(b) Subcontractor shall not discriminate against any employee or applicant because of race, color, religion, sex, national origin, age, handicap or veteran status; and Subcontractor shall comply with the Civil Rights Act of 1964, executive Order 11246, 41 CFR Part 60 and all other statutes and laws prohibiting any such discrimination.

(c) To the extent required by law, these requirements shall be specifically included in every subcontract or purchase order issued by Subcontractor.

(d) Subcontractor shall comply with the **Hazard Communication Rule, 29 CFR Parts 1910, 1915, 1917, 1918, 1926 and 1928** ("The Rule") and shall furnish Contractor with **Material Safety Data Sheets** for all hazardous materials, as defined by the Rule, to be used in the Work by Subcontractor, its agents, subcontractors, or suppliers, at least five days in advance.

(e) Subcontractor will comply with all federal and state antitrust laws, and further represents and warrants that no employees, officer, director or agent of Subcontractor has directly or indirectly entered into any agreement, participated in any collusion, or otherwise taken any action in restraint of free competitive bidding in connection with the Work.

(f) The Subcontractor accepts exclusive liability for any and all sales tax or use tax which may be assessed against materials, equipment or labor used in his/her part of the work.

14. **LABOR:** In connection with the Work, Subcontractor shall be bound by any labor agreement executed by Contractor or Owner to the extent required by such agreements.

15. **SUSPENSION OR TERMINATION BY OWNER:** If the Contract, in whole or in part, for whatever reason, is

suspended or terminated, Subcontractor, upon written notice from Contractor, shall immediately suspend or terminate the Work and cancel all unfilled orders for materials or equipment. In such event, Contractor's liability to Subcontractor shall be strictly limited to Contractor's recovery on Subcontractor's behalf from Owner, less any and all related expenses.

16. **DEFAULT, ET CETERA:** (a) If, in the supportable opinion of Contractor, Subcontractor

  (i) breaches any term of this Subcontract;
  (ii) fails to provide sufficient skilled labor or materials of proper quality;
  (iii) fails to repair defective Work;
  (iv) fails to prosecute the Work promptly and diligently to promote the progress of the Project;
  (v) becomes insolvent or experiences financial difficulty so that proper performance of the Work is jeopardized; or
  (vi) becomes disabled from complying with any term of this Subcontract by a petition in Bankruptcy or by appointment of a receiver, Contractor may, at its sole option, declare Subcontractor in default and terminate this Subcontract, effective twenty-four (24) hours after written notice to Subcontractor. Said written notice shall be by registered mail addressed to Subcontractor or by posting in some conspicuous place on the job.

(b) Contractor may then, at his/her sole option,

  (i) provide such labor and materials, and deduct the cost thereof from any money due Subcontractor, and/or
  (ii) take possession, for the purpose of completing the Work, of all materials and equipment thereon of Subcontractor in order to finish the Work.

(c) In the event of such termination, Subcontractor shall not receive any further payments and shall be liable for any damages or losses incurred by Contractor in completing the Work, and Contractor shall have a lien upon all materials and equipment of which it takes possession to secure such obligation.

(d) If Subcontractor is in default, as defined above, or otherwise owes Contractor payment for any reason, Contractor may also offset such obligation or debt against any monies which Contractor, or any of its corporate affiliates, owes Subcontractor under this or any other contract, subcontract, purchase order or agreement.

(e) Should Subcontractor default in any of the provisions of this Subcontract and should Contractor employ an attorney to enforce any provision hereof or to collect damages for breach of the Subcontract or to recover on the bond mentioned in Paragraph 18, Subcontractor and his surety agree to pay Contractor such reasonable attorneys' fees as he/she may expend therein. As against the obligations herein contained, Subcontractor and his/her surety waive all rights of exemption.

17. **CLAIMS PROCEDURE:** (a) Subcontractor may submit a claim for extra work or otherwise for additional compensation only as permitted by the Contract and this Subcontract; and Subcontractor will be solely responsible for complying with all time limitations and other requirements as set forth in the Contract.

(b) If permitted by law and the Contract, Subcontractor may at his/her sole expense, pursue its claim against the Owner in the name of the Contractor; but prior thereto, Subcontractor shall be required to enter into a separate written agreement to indemnify Contractor from any associated costs, expenses, or other losses.

(c) Subcontractor shall have no such claim against Contractor for which Owner is not liable or otherwise has not made payment to Contractor; and in no event shall Contractor have any liability to Subcontractor in excess of any actual recovery from Owner for claims relating to the Work.

(d) If any claim or dispute arises relating to this Subcontract, the Subcontractor shall immediately make all of its books and records reasonably available to Contractor for review and audit.

(e) Any legal action by Subcontractor against Contractor or Owner must be commenced within the time allowed by statute but in no event more than one year of the date the cause of action accrued.

18. **PAYMENT AND PERFORMANCE BONDS:** Subcontractor shall provide separate payment and performance bonds, each in the penal amount of this Subcontract, on forms and with sureties satisfactory to Contractor, for the faithful performance of this Subcontract.

19. **SUB-SUBCONTRACTS, ET CETERA:** (a) Subcontractor shall not assign or sublet any portion of this Subcontract nor its proceeds without the advance written consent of Contractor, if required by the Contractor. Contractor will have the option to deduct prorata bond from Subcontractor's payments in lieu of requiring a bond to be furnished.

(b) Subcontractor shall incorporate into any such subcontract or similar agreement all provisions required by law to be incorporated as well as all provisions of this Subcontract and the Contract which may affect the rights of Contractor.

20. **SAFETY:** Subcontractor shall take all actions and precautions necessary to ensure the safety of its employees, the general public, and all other persons on, around, or affected by the Work.

21. **ENFORCEMENT:** Failure or delay by Contractor to require performance of any provision of this Subcontract shall not be deemed a waiver of its right to enforce such provision, or a waiver of any other right. If any provision of this Subcontract is found unenforceable by any court or tribunal, Contractor and Subcontract agree that such provision shall be modified to the minimum extent necessary to render it enforceable, and that the remainder of this Subcontract shall not be otherwise affected. If there is any conflict between the terms and conditions of this Subcontract and the terms and conditions of the Contract, the terms and conditions imposing a greater burden on Subcontractor shall prevail. This Subcontract constitutes the complete agreement between the parties and supersedes any and all prior understandings, conversations, and proposals.

22. **ARBITRATION:** (a) Notwithstanding the other provisions of this Section 22, Contractor and Subcontractor agree that, in the event they are in disagreement regarding any matter or issue submitted under this Agreement to the other party for consent or approval of the other party, then Contractor and Subcontractor shall attempt to resolve such dispute in good faith. If, after a period of thirty (30) days, Contractor and Subcontractor are unable to reach agreement with respect to such matter of issue, then, before initiating litigation or other legal proceedings regarding the same (except in the event of an emergency situation that would require immediate resolution), either party may elect, by written notice to the other party, to have such dispute resolved by arbitration pursuant to this Section 22.

(b) Any arbitration initiated pursuant to this Section 22 shall be conducted in accordance with following procedures:

(i) Contractor and Subcontractor may elect arbitration pursuant to this Section 22 at any time by giving written notice of such election (the "Arbitration Notice") to the other party, which Arbitration Notice shall describe in reasonable detail the nature of the claim, dispute or controversy.

(ii) Within ten (10) days after the delivery of an Arbitration Notice, each party shall select and designate in writing to the other party a reputable, disinterested individual having no affiliation with any other parties and having not less than ten (10) years' experience in highway and/or site construction in the southeastern United States and willing to act as an arbitrator of the claim, dispute or controversy in questions (a "**Qualified Individual**"). Each party shall use its best efforts to select a Qualified Individual. Within ten (10) days after the foregoing selections have been made, the arbitrators so selected shall jointly select a third Qualified Individual. In the event that a party fails to appoint an initial arbitrator, the arbitrator selected by the other party shall serve as the sole arbitrator for the purposes of this Section 22. In the event the two arbitrators initially selected are unable to agree on a third arbitrator within the second ten (10) day period referred to above, then, on the application of either party, the American Arbitration Association shall promptly select an appropriate Qualified Individual as the Third arbitrator. The three arbitrators selected pursuant to this **Subsection 22(b) (II)** shall constitute the arbitration panel for the arbitration in question.

(iii) The presentations of the parties hereto in the arbitration proceeding shall be commenced and completed within thirty (30) days after the selection of the arbitration panel pursuant to **Subsection 22(b) (II)** above, and the arbitration panel shall render its decision in writing within fifteen (15) days after the completion of such presentations. Any decision concurred in by any two (2) of the arbitrators shall constitute the decision of the arbitration panel, and unanimity shall not be required.

(c) The arbitration panel shall have the discretion to include in its decision a direction that all or part of the reasonable attorney's fees and costs of any party or parties and/or the costs of such arbitration be paid by any other party or parties. On the application of a party before or after the initial decision of the arbitration panel, and proof of its reasonable attorneys' fees and costs, the arbitration panel shall order the other party to make any payments directed pursuant to the preceding sentence.

23. **LAW TO APPLY:** This agreement and all Contracts hereunder shall be governed and interpreted under the Laws of the State of Alabama, and venue shall be maintainable in Dale County, Alabama.

24. **SPECIAL PROVISIONS:** (If NONE, so state)

(1) _____
_____
_____

(2) _____
_____

(3) _____
_____
_____

(4) _____
_____
_____

This Subcontract contains the entire agreement between the parties, and all additions thereto or changes therein shall be in writing and shall not be binding unless same are in writing.

This Subcontract is effective upon the later of the two dates shown below:

SUBCONTRACTOR

DAVID BULGER INC.

By: _David Bulger_

Title: _President_

Date: _10/15/04_

CONTRACTOR

WIREGRASS CONSTRUCTION COMPANY, INC.

By: _____

Title: _____

Date: _____

Mailing Address:
3904 Brainbridge Hwy
Montgomery   AL   36108
City         State  Zip

Telephone No. _264-0430_
Fax No. _264-1901_
Contractor's License No. _24608_
Federal ID No. _63-1059064_
Payroll Contact _Brenda Kelley_
EEO Contact _Brenda Kelley_
DBE Contact _____
Scheduling Contact _David Bulger_