IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
**(EASTERN DIVISION)**

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION CASE NUMBER: |
| | ) | **3:06-CV-00078-MHT** |
| WIREGRASS CONSTRUCTION CO., INC., | ) | |
| and THE TRAVELERS INDEMNITY CO., | ) | |
| | ) | |
| Defendants. | ) | |

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, **State Automobile Mutual Insurance Company ("State Auto")**,

in the above-styled action, and in support of its Motion for Summary Judgment, contemporaneously

files this legal memorandum brief and evidentiary submission.

## I.  Evidentiary Submission

1.     A copy of the Second Amended Complaint for Declaratory Judgment, attached hereto

as Exhibit "A".

2.     A certified copy of State Auto's Business Auto Policy issued to David Bulger, Inc.

with effective dates of October 19, 2004 through October 19, 2005 bearing policy number BAP

2095834, attached hereto as Exhibit "B".

3.     A certified copy of State Auto's Series I Contractor's Policy issued to David Bulger,

Inc. with effective dates of October 19, 2004 through October 19, 2005 bearing policy number SOC

2141652, attached hereto as Exhibit "C".

4.      A certified copy of State Auto's Commercial Umbrella Coverage Form issued to David Bulger, Inc. bearing policy number CXS 00 01 1002, attached hereto as Exhibit "D".

5.      Subcontract Agreement between David Bulger, Inc. and Wiregrass Construction Company, Inc. ("Wiregrass"), attached hereto as Exhibit "E".

6.      Certificate of Liability insurance issued to Wiregrass by Aronov Insurance, attached hereto as Exhibit "F".

7.      A copy of State Auto's Agency Agreement with Aronov Insurance, attached hereto as Exhibit "G".

8.      A copy of the Complaint in the underlying lawsuit styled *Jessica Hatton, as dependent widow and Administratrix of the Estate of Jackson Irving Hatton, Jr. vs. David Bulger, Inc., et al.*, bearing Civil Action Number CV05-119 filed and pending in the Circuit Court of Macon County, Alabama, attached hereto as Exhibit "H".

9.      A copy of the First Amended Complaint in the underlying lawsuit, attached hereto as Exhibit "I".

10.     A narrative summary submitted in support of State Auto's Motion for Summary Judgment setting forth the undisputed facts upon which the motion is based.  This is submitted pursuant to Federal Rule of Civil Procedure 56(c)(1) and is incorporated within State Auto's motion.

11.     A legal memorandum argument submitted in support of State Auto's Motion for Summary Judgment and incorporated herein.

2

## II.  <u>Narrative Summary of Undisputed Facts</u>

State Auto issued a business auto policy to David Bulger, Inc. with effective dates of October 19, 2004 through October 19, 2005 bearing policy number BAP 2095834, a Series I Contractor's Policy with effective dates of October 19, 2004 through October 19, 2005 bearing policy number SOC 2141652 and a Commercial Umbrella Coverage Form bearing policy number CXS 00 01 1002. Upon information and belief, Aronov Insurance, Inc., an independent insurance agency, served as David Bulger, Inc.'s agent and procured the aforementioned policies from State Auto. (Exhibits "B", "C" and "D").

Prior to beginning work on the project where the accident made the basis of the underlying lawsuit occurred, Aronov Insurance provided Wiregrass with a Certificate of Liability Insurance ("Certificate") dated December 16, 2004.  (Exhibit "F").  The Certificate contains the following language:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.
>
> •••
>
> THE POLICIES FOR INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

3

*Id.* Wiregrass contends that this Certificate makes it an additional insured on the policies of insurance issued by State Auto to David Bulger, Inc.

The underlying lawsuit arises out of an accident which occurred in Macon County, Alabama on May 9, 2005. (Exhibit "H" and "I")(Hereinafter referred to as the "underlying lawsuit"). According to the allegations in the underlying lawsuit, the decedent was working at a construction site in Macon County, Alabama when he was run over by a vehicle driven by Edward Bowman on behalf of David Bulger, Inc. *Id.* at ¶¶7-11. At the time, the decedent was allegedly working for Macon County, Alabama and in addition to claims against Mr. Bowman and David Bulger, Inc. for negligence, wantonness, negligent *respondeat superior*, negligent and/or wanton entrustment and negligent and/or wanton hiring, retention, maintenance and/or training, a claim was made against Macon County, Alabama for workers' compensation benefits. *Id.* at ¶¶10, 11. Finally, the Plaintiff in the underlying lawsuit, as amended, contends Wiregrass had responsibility for traffic control on the construction project and that it negligently and/or wantonly failed to control traffic within the project area. (Exhibit "I").

After it was named as a defendant in the underlying lawsuit via Plaintiff's First Amended Complaint, Wiregrass' insurance carrier, St. Paul Travelers and/or The Travelers Indemnity Company ("Travelers Indemnity"), demanded that State Auto defend and indemnify its insured pursuant to a subcontract agreement between David Bulger, Inc. and Wiregrass and the Certificate of Insurance issued by Aronov Insurance to Wiregrass. (Exhibits "E" & "F").

State Auto's policies contain numerous provisions and language which apply to the underlying lawsuit and Wiregrass' demand for defense and indemnity by and through Travelers Indemnity. Certified copies of said policies are attached and State Auto adopts and incorporates the

4

language contained within those policies as if fully set forth herein. Based upon a fair reading of the policies and the underlying lawsuit, State Auto asserts judicable controversies exist as to whether Wiregrass is an "insured" as that term is defined in the policies, whether the subcontract is an "insured contract" as that term is defined in the policies, whether the "aircraft, auto or watercraft" exclusion and others contained in the policies apply to the allegations in the underlying lawsuit and whether and to what extent the "other insurance" clauses in the policies apply. More specifically, the following provisions among others may apply.

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend

the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

1. The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

2. Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlement under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

•••

## 2. Exclusions

This insurance does not apply to:

•••

## b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an

6

insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

•••

**g.    Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1)    A watercraft while ashore on premises you own or rent;

(2)    A watercraft you do not own that is:

(a)    Less than 26 feet long; and

(b)    Not being used to carry persons or property for a charge;

7

(3)    Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)    Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)    "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

•••

## SECTION II – WHO IS AN INSURED

1.    If you are designated in the Declarations as:

a.    An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.    A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with the respect to the conduct of your business.

c.    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e.     A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.     Each of the following is also an insured:

a.     Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers' (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1)     "Bodily injury" or "personal and advertising injury":

(a)     To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b)     To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c)     For which there is any obligation to share damages with or repay someone else must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

9

    (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

    (a) Owned, occupied or used by,

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  b. Any person (other than your "employee' or "volunteer worker"), or any organization while acting as your real estate manager.

  c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

  d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

 3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

10

However, no person or organization is an insured with respect to:

    a.    "Bodily injury" to a co-"employee" of the person driving the equipment; or

    b.    "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.    Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

    a.    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, which is earlier;

    b.    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c.    Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

•••

4.    **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

11

**a.    Primary Insurance**

This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.

**b.    Excess Insurance**

This insurance is excess over:

    **(1)**    Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (a)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        (b)    That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        (c)    That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (d)    If the loss arises out of the maintenance or use of the aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** - Bodily Injury And Property Damage Liability.

    **(2)**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

12

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (2)    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.    Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

•••

**SECTION V – DEFINITIONS**

•••

**2.**    "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

•••

13

9.    "Insured contract" means:

•••

    f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract agreement.

Paragraph **f.** does not include that part of any contract or agreement:

•••

    **(2)**    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

•••

    **(b)**    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

•••

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

•••

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.    **Section II – Who Is An Insured** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

B.    With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

2.    **Exclusions**

This insurance does not apply to:

a.    "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    (1)    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

    (2)    Supervisory, inspection, architectural or engineering activities.

•••

15

## COMMERCIAL UMBRELLA COVERAGE FORM

•••

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section III – Who Is An Insured, beginning on page 11.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions, beginning on page 17.

### Section I – Insuring Agreements

In consideration of the payment of premium and in reliance upon representations you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in Item 4 of the Declarations, and all the exclusions, terms and conditions of this policy, we agree with you as follows:

### Coverage A. Coverage A. Bodily Injury And Property Damage Liability

1.  Insuring Agreement

    a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of 'bodily injury" or "property damage" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

        (1)  The amount we will pay for "ultimate net loss" is limited as described in Section IV – Limit Of Insurance;

        (2)  At our discretion, we may investigate any "occurrence" and settle any resulting "claim" or "suit";

16

(3)    We have a right and duty to defend the insured against any "suits' to which this insurance applies:

   (a)    But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

   (b)    If the applicable limit of "underlying insurance" is exhausted.

However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; and

(4)    Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.

No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II – Defense.

•••

2.    Exclusions. This insurance does not apply to:

•••

b.    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

•••

   (2)    Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured

17

are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; and

(c)    The indemnitor insured's "underlying insurance" also deems these expenses to be damages.

•••

g.    "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or chartered, rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrong doing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence' which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of aircraft, or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1)    Watercraft while ashore on premises you own or rent:

(2)    Watercraft you do not own that are:

(a)    Less than 26 feet long; and

18

(b)    Not being used to carry persons or property for a charge; or

•••

h.    "Bodily injury' or "property damage" arising out of the use of any "mobile equipment" or "auto" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

•••

r.    "Bodily injury" or "property damage" arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

•••

**Section III – Who Is An Insured**

•••

2.    Except with respect to any "auto" or any mobile equipment" registered in your name under any motor vehicle registration law, each of the following is also an insured:

•••

f.    Any person or organization for whom you have agreed in writing prior to any "occurrence" or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you. This policy shall not afford such person or organization limits of insurance in excess of:

(1)    The minimum limit of insurance you agreed to provide; or

(2)    The limit of insurance under this policy, whichever is less.

19

•••

**Section V – Conditions**

•••

10.    Other Insurance. If other valid and collectible insurance is available to the insured for "ultimate net loss" we cover under this policy, our obligations under this policy are limited as follows:

    a.    This insurance is excess over:

        (1)    Any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance; and

        (2)    Any other insurance available to the insured, whether primary or excess, covering liability for damages arising out of premises or operations for which you have been added as an additional insured.

    b.    We will indemnify only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

        (1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

        (2)    The total of all deductible and self-insured amounts under this or any other insurance.

    c.    We will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers in accordance with provisions of Condition 16 below.

•••

20

**Section VI – Definitions**

•••

2.     "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. However, "auto" does not include "mobile equipment".

•••

4.     "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these any time.

•••

11.    "Insured contract" means:

•••

f.     That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

•••

15.    "Occurrence" means:

a.     With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under contractor agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you; or

b.    With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you, "bodily injury" caused by accident or disease.

### III.  Legal Argument

### A.    Summary Judgment Standard

State Auto will not burden the Court with a detailed analysis of the summary judgment standard with which the Court is well aware.  However, plaintiff wishes to point out a decision clarifying the standard.  Specifically, in *Dennis Joslin Company, LLC v. Tate*, 779 So.2d 217 (Ala. 2000), the Supreme Court of Alabama held:

> The law requires only that a party moving for a summary judgment present evidence, from whatever source, to show that there is no triable issue of fact in the case.  The moving party may rely on any of the material specified in Rule 56(c)(3) (pleadings, depositions, answer to interrogatories, and admissions on file, (an) affidavits, if any).  **In other words, a moving party "need not prove a negative in order to prevail on a summary judgment".**  *Ex parte group General Motors Corp.*, (Ms. 1971318, Sept 24, 1999), quoting *Lawson State Community College v. First Continental Leasing Corp.*, 529 So.2d 926, 935 (Ala. 1988)."

*Dennis Joslin*, 779 So.2d at 220. (emphasis added).

Accordingly, Wiregrass, in opposition to this Motion for Summary Judgment, must submit substantial evidence that it is owed defense and/or indemnification from State Auto for potential liability in a State Court lawsuit filed in the Circuit Court of Macon County, Alabama.

### B.    Wiregrass is not an additional insured on State Auto's policies of insurance because a certificate was issued by Aronov Insurance.

Wiregrass contends that State Auto must indemnify and defend it against the plaintiffs' claims in the underlying lawsuit because Aronov Insurance sent it a Certificate of Insurance on

David Bulger, Inc.'s policies.  However, this certificate does not create coverage for Wiregrass and it is undisputed Wiregrass is not named as an insured under State Auto's policies.  In *St. Paul Fire & Marine Ins. Co. v. Newman,* 2000 U.S. Dist. LEXIS 13688, St. Paul sought a declaration that it had no duty to indemnify or defend defendant the estate of George Witherspoon, the deceased.  *Id.* at *2.  St. Paul issued a commercial automobile policy insuring McElroy Truck Lines, Witherspoon's employer.  *Id.*  The Intervenors brought an action in state court seeking to recover for injuries which they suffered in an accident with Witherspoon.  *Id.*

The court determined that according to the language of St. Paul's policy with McElroy, Witherspoon was not a "protected person" under the policy.  *Id.* at *15.  However, the Intervenors argued that even if the terms of the policy excluded coverage for Witherspoon, the independent insurance agent Duckworth-Morris either modified the policy or St. Paul was estopped from denying coverage because of the certificates of insurance that were produced by Duckworth-Morris.  *Id.* at *19.  The certificates listed Witherspoon as "Owner Operator."

The certificates of insurance produced by Duckworth-Morris contained the following language:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.
>
> •••
>
> THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT

23

> WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE
> ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY
> THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE
> TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.
> LIMITS SHOWN MY HAVE BEEN REDUCED BY PAID
> CLAIMS.

*Id.* at 20.  As a result of this language, the court held that the "certificates clearly indicate that they

serve only informational purposes and do not alter the terms of the policy."  *Id.*

In this matter, the certificates of insurance issued by Aronov Insurance contained almost

identical language.  In particular, these certificates included the following language:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF
> INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE
> CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT
> AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED
> BY THE POLICIES BELOW.
>
> •••
>
> THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN
> ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY
> PERIOD INDICATED, NOTWITHSTANDING ANY
> REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT
> OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS
> CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE
> INSURANCE AFFORDED BY THE POLICIES DESCRIBED
> HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND
> CONDITIONS OF SUCH POLICIES.  AGGREGATE LIMITS
> SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Accordingly and as argued successfully by St. Paul Fire & Marine in *Newman, supra*, this

language serves only informational purposes and does not alter the terms of the policy.  Therefore,

Wiregrass is due no coverage solely because it received certificates of insurance.

**C.    Even if Wiregrass were an additional insured, Plaintiff's claims in the underlying lawsuit against Wiregrass are not covered under State Auto's policies.**

**1.  Aircraft, Auto and Watercraft Exclusion**

Wiregrass is not entitled to coverage under the commercial general liability coverage provisions of State Auto's policy number SOC2141652 as the claims made against it in the underlying lawsuit fit squarely within the policy's "aircraft, auto or watercraft" exclusion.  That exclusion provides as follows:

> **g.  Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto", or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto", or watercraft that is owned or operated by or rented or loaned to any insured.
>
> This exclusion does not apply to:
>
> (1)  a watercraft while ashore on premises you own or rent;
>
> (2)  a watercraft you do not own that is:
>
> > (a) less than 26 feet long; and
> >
> > (b)  not being used to carry persons or property for a charge;
>
> (3)  parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)  liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)  "bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

The complaint, as amended, in the underlying lawsuit makes clear the plaintiff's claims arise out of an accident involving a dump truck.  As to Wiregrass, the plaintiff asserts Wiregrass "failed to control traffic within the project area," which resulted in the decedent's death. (First Amended Complaint, ¶38).  Based upon the nature of the accident made the basis of the underlying lawsuit and the fact that it is without dispute it involved a dump truck, the claims asserted in the underlying lawsuit against Wiregrass would be excluded from coverage, even if Wiregrass were an additional insured under the policy.

Two Alabama Supreme Court decisions applying similar exclusionary language are instructive.  In *Alfa Mut. Ins. Co. v. Jones*, 555 So.2d 77 (Ala. 1989), the Alabama Supreme Court was asked to determine whether coverage existed for a wrongful death suit arising out of the death of a child while he was operating a go-cart owned by Alfa insureds.  Alfa's policy excluded coverage for:

e.  Bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:

•••

(2) A motor vehicle owned or operated by or rented or loaned to an insured... .

*Jones*, 555 So.2d at 78.

Initially, the trial court entered judgment in favor of Alfa, but then vacated its judgment and determined Alfa owed coverage after the plaintiff amended his complaint to delete any reference to the go-cart or to the manner in which the decedent died.  *Id.* at 77.  From that decision, Alfa appealed.

On appeal, the Alabama Supreme Court determined the claims were excluded by Alfa's policy provisions, reversed the trial court's judgment and rendered judgment in Alfa's favor.  *Id.* at 79.  In so doing, it determined the negligent supervision theory asserted by the plaintiff against Alfa's insureds sought recovery "for a death arising out of the ownership of a motor vehicle owned by the insureds" and that since the ownership of the motor vehicle was the "very nexus" between Alfa, the plaintiff and Alfa's insureds, the exclusion was effective and Alfa was neither obligated to provide coverage for, nor to defend, its insureds.  *Id.*

In reaching its decision in *Jones, supra*, the Alabama Supreme Court discussed at length its decision in *Cooter v. State Farm Fire & Cas. Co.*, 344 So.2d 496 (Ala. 1977).  In *State Farm*, the Alabama Supreme Court was asked to determine whether it was obligated to defend a lawsuit for personal injuries arising out of an automobile accident against its insured.  *State Farm*, 344 So.2d at 496.

The State Farm policy in question contained similar exclusionary language to that applied in *Jones, supra*.  344 So.2d at 497.  In deciding State Farm owed no coverage, the Alabama Supreme Court ultimately determined the nexus between State Farm, its insured and the plaintiff was an

occurrence in a motor vehicle and consequently, the lawsuit was excluded from coverage. *Id.* at 499.[1]

Similarly, there is little doubt the claims in the underlying lawsuit directly involve an "auto" as that term is defined in State Auto's policy. In other words, the nexus between State Auto, the plaintiff in the underlying lawsuit and the defendants in the underlying lawsuit, Wiregrass included, is the dump truck accident made the basis of the underlying lawsuit. Consequently, no coverage exists for Wiregrass under the policy and State Auto is entitled to a judgment in its favor and against Wiregrass' claims for defense and indemnity.

**2. Excess Coverage Provisions**

State Auto asserts that Wiregrass is not an "insured" as that term is defined in the Series I Contractor's Policy issued to David Bulger, Inc. Even in the event Wiregrass is deemed to be an "insured" under that policy, any insurance coverage afforded to it would be "excess" to that coverage provided under policies issued to Wiregrass by Travelers Indemnity.

---

[1] *See, also, Alabama Liability Insurance Handbook*, Bibb Allen, §10-12, fn. 49 (citing *Billy Gibbs v. Travelers Prop. Cas. Co.*, PE: 02-14426-cc, 2003 U.S. App. LEXIS 7865 (11th Cir. Ala. 2003)(station owner had no coverage where in a high-speed chase he caused one who he thought left station without paying for gas to collide with vehicle plaintiff was riding in. The court held that even if the failure of the station owner to have a policy regarding drive-offs, such failure was not an independent cause of the damage complained of because the "intervening of the use of a car in a high-speed chase was the legal cause of the damages."); *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis.2d 469, 329 N.W.2d 150 (1983)(holding coverage does not exist for "negligent supervision" or "failure to control" claims as they are directly related to the manner of operation of a vehicle and that "there appears to be no reasonable doubt that the two areas or theories of liability on which the plaintiffs rely are intimately connected with the very types of coverages which are expressly excluded.")

28

Upon information and belief, Travelers Indemnity provided policies of insurance to Wiregrass which would cover it for plaintiff's claims in the underlying lawsuit.[2]  In State Auto's Series I Contractor's Policy issued to David Bulger, Inc., the following provisions are instructive as to which policies of insurance would serve as Wiregrass' primary insurance policies:

### 4.  Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

### a.  Primary Insurance

This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.

### b.  Excess Insurance

This insurance is excess over:

**(1)**  Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

---

[2]State Auto has not received a copy of Travelers Indemnity/Travelers policies to Wiregrass and will supplement this brief with the policies once they have been produced.

(d)  If the loss arises out of the maintenance or use of the aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** - Bodily Injury And Property Damage Liability.

(**2**)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Under Alabama law, a liability insurance policy having an "excess clause" such as that contained within State Auto's Series I Contractor's Policy issued to David Bulger, Inc. does not furnish coverage unless liability exceeds the amount of the other (primary) insurance. *State Farm Fire & Cas. Co. v. Hartford Acci. & Indem. Co.*, 347 So.2d 389, 393 (Ala. 1977).  The "other insurance" available that affords primary coverage for those claims asserted against Wiregrass in the underlying lawsuit is comprised of the Commercial General Liability Policy and Auto Liability Policy issued to Wiregrass by Travelers Indemnity.  State Auto therefore requests this Court to declare that any coverage provided to Wiregrass under the Series I Contractor's Policy constitutes "excess" coverage and further, that the Commercial General Liability Policy and Auto Liability Policy issued to Wiregrass by Travelers Indemnity provide "coverage" for the claims brought against Wiregrass in the underlying lawsuit.

### 3.  Umbrella Policy

Paragraph 5 of the subcontract entered into between Wiregrass and David Bulger, Inc. provides that David Bulger, Inc. shall maintain various forms of insurance during the course of the performance of its duties under the subcontract.  Paragraph 5(b), entitled "Commercial Liability and Property Damage Insurance" states, in pertinent part, that David Bulger, Inc. must maintain:

> **(b) COMMERCIAL LIABILITY AND PROPERTY DAMAGE INSURANCE,** written by insurers acceptable to [Wiregrass] having minimum coverage of **$1,000,000 combined single limit.**
>
> Commercial General Liability
> on an occurrence basis                    $1,000,000 Each Occurrence

Section (d) of ¶ 5, entitled "Umbrella and/or Excess Liability Policy" specifically provides:

> **(d) UMBRELLA AND/OR EXCESS LIABILITY POLICY:**
>
> **The limits specified above may be attained by individual policies or by a combination of underlying policies with Umbrella and/or Excess Liability policies.**

(Subcontract, Exhibit "D")(emphasis added).

Pursuant to the terms of the subcontract, David Bulger, Inc. obtained several policies of insurance from State Auto, including the Commercial General Liability Policy attached hereto as Exhibit "C" and the Commercial Umbrella Policy attached hereto as Exhibit "D". It is undisputed that the Commercial General Liability Policy provided the amount of coverage – $1,000,000 – called for in the subcontract. Thus, absent additional coverage under the Commercial Umbrella Policy issued by State Auto to David Bulger, Inc., the maximum amount of insurance proceeds available (it at all) to Defendant Wiregrass would not exceed the $1,000,000 in coverage under the Commercial General Liability Policy. Under the unambiguous language of the Commercial Umbrella Policy, however, no coverage in excess of the $1,000,000 in coverage provided by the Commercial General Liability Policy can even be claimed by Wiregrass.

Section III of the Commercial Umbrella Policy, entitled "Who Is An Insured?" provides:

> 2. Except with respect to any "auto" or any "mobile equipment" registered in your name under any motor vehicle registration law, each of the following is also an insured:
>
> •••

f.  Any person or organization for whom you have agreed in writing prior to any "occurrence" or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned by you.  **This policy shall not afford such person or organization limits of insurance in excess of:**

**(1) The minimum limit of insurance you agreed to provide; or**

**(2) The limit of insurance under this policy, whichever is less.**

Exhibit "I", p.11 (emphasis added).  Coverage under the Commercial Umbrella Policy does not exist because the terms of the subcontract required David Bulger, Inc. to maintain commercial general liability coverage in the amount of $1,000,000, which it undisputedly agreed to and did.  At the same time, the unambiguous terms of the Commercial Umbrella Policy provide that such policy "shall not afford [Wiregrass] limits of insurance in excess of the minimum limit of insurance ($1,000,000) you agreed to provide or the limit of insurance under this policy, ($1,000,000) whichever is less." (Exhibit "I", p.11).

A straightforward review of the applicable contract language yields but one conclusion: coverage under the Commercial Umbrella Policy cannot be afforded to Wiregrass as $1,000,000 in insurance coverage was required under the subcontract and maintained by David Bulger, Inc. pursuant to the Commercial General Liability Policy.  This conclusion is further supported by the language of the subcontract referenced above, which provides that David Bulger, Inc. must provide liability coverage of "**$1,000,000 combined single limit**" and moreover, that the $1,000,000 combined single limit "**may be attained by individual policies or by a combination of underlying policies with Umbrella and/or excess liability policies.**" (Exhibit"D")(emphasis added).

32

Alabama law clearly provides that "the issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *American Resources Ins. Co. v. H & H Stephens Construction, Inc.,* 2006 Ala. LEXIS 65, *11 (Ala. 2006)(citing *McDonald v. U.S. Die Casting & Dev. Co.*, 585 So. 2d 853, 855 (Ala. 1991)). "The test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean." *Id.* at *11-12; *see also, Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 697 (Ala. 2003)(quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 308-09 (Ala. 1999)). If words used in an insurance policy are reasonably certain in their meaning, they are not ambiguous as a matter of law, and the rule of construction favoring the insured does not apply. In *re HealthSouth Corp.*, 308 F.Supp.2d 1253, 1268 (N.D. Ala. 2004). The application of this legal standard to the language contained in the Commercial Umbrella Liability Policy, as well as the subcontract itself, reveals no ambiguity whatsoever, exists. State Auto is therefore entitled to judgment as a matter of law with respect to its allegation that coverage under the Commercial Umbrella Liability Policy does not exist.

     D.      **Any insurance coverage available to Wiregrass under the State Auto Business Auto Policy is excess of the primary coverage available under Wiregrass' Commercial General Liability Policy and Business Auto Liability Policy.**

As a threshold matter, State Auto denies that Wiregrass qualifies as an "insured" under the State Auto's Business Auto Liability Policy attached hereto as Exhibit "B" and is not entitled coverage under the plain terms of the policy. To the extent Wiregrass may be considered an "insured" under that policy, any coverage provided is "excess over any other collectible insurance" available to Wiregrass pursuant to the unambiguous language contained within the "Other Insurance" portion of the policy. Alabama law provides that "[I]n a liability insurance policy having an 'excess

clause,' it is expressed that if there be other insurance, the policy does not furnish coverage unless liability exceeds the amount of the other insurance." *State Farm Fire & Cas. Co. v. Hartford Acci. and Indem. Co.*, 347 So.2d 389, 393 (Ala. 1977). The "Other Insurance" provision contained within the Business Auto Liability Policy issued by State Auto to David Bulger, Inc. provides, in pertinent part:

> **5. Other Insurance**
>
> **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. **For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.**

Exhibit "B", p. 8

At the time of the accident which forms the basis of the underlying lawsuit in this case, it is undisputed that Wiregrass was the named insured under and owner of at least two policies of insurance – a Commercial General Liability Policy and an Auto Liability Policy – issued by Travelers Indemnity. It is further undisputed that Wiregrass did not "own" the "covered auto" because the "covered auto" involved in the subject accident was a dump truck owned and operated by David Bulger, Inc. The unambiguous language contained in the State Auto Business Auto Liability Policy therefore provides that any coverage afforded under that policy is "excess over any other collectible insurance."

In this instance, that "other collectible insurance" is comprised of the Commercial General Liability Policy and Auto Liability Policy issued to Wiregrass by Travelers Indemnity. The policies issued to Wiregrass by Travelers Indemnity are therefore "primary" and State Auto's Business Auto Liability Policy "does not furnish coverage unless liability exceeds the amount of the other

insurance". *State Farm Fire & Cas. Co. v. Hartford Acci. and Indem. Co.*, 347 So.2d 389, 393 (Ala. 1977). State Auto therefore requests this Court to declare, as a matter of law, that any coverage provided to Wiregrass under the State Auto Business Auto Liability Policy constitutes "excess" coverage and further, that the Commercial General Liability Policy and Auto Liability Policy (together with any other applicable policies issued to Wiregrass identified in discovery) issued to Wiregrass by Travelers Indemnity provide "primary" coverage for the claims brought against Wiregrass in the underlying lawsuit.

WHEREFORE, PREMISES CONSIDERED, Plaintiff State Automobile Mutual Insurance Company respectfully requests that this Honorable Court enter summary judgment in its favor on a full and final basis declaring it owes no duty, coverage or contribution to the Defendants for the claims in the underlying lawsuit.

 /s/ Chris Zulanas
Christopher J. Zulanas
E-Mail: czulanas@friedmanleak.com

Michael J. Douglas
E-Mail: mdouglas@friedmanleak.com

Attorneys for Plaintiff
State Automobile Mutual Insurance Company

Friedman, Leak, Dazzio,
Zulanas & Bowling, PC
Post Office Box 43219
Birmingham, AL 35243
(205) 278-7000 Tel
(205) 278-7001 Fax

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify I have caused a copy of the foregoing pleading to be served on counsel for all parties this **8th** day of **June, 2006**.

/s/ Chris Zulanas
OF COUNSEL

cc:
Clyde C. (Jack) Owen Jr.
C. Winston Sheehan, Jr.
**Ball, Ball, Matthews & Novak**
2000 Interstate Park Dr., Ste. 204
Montgomery, AL 36109

Carol Ann Smith
Susan H. McCurry
**Smith & Ely**
2000A SouthBridge Pkwy, Ste. 405
Birmingham, AL 35209

36