# Exhibit "D"

PLEASE READ THIS POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS. WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS -- SECTION V -- OF THIS POLICY.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section III -- Who Is An Insured, beginning on page 11.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI -- Definitions, beginning on page 17.

Section I  Insuring Agreements

In consideration of the payment of premium and in reliance upon representations you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in Item 4 of the Declarations, and all the exclusions, terms and conditions of this policy, we agree with you as follows:

Coverage A.  Coverage A. Bodily Injury And Property Damage Liability

1. Insuring Agreement
    a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:
        (1) The amount we will pay for "ultimate net loss" is limited as described in Section IV -- Limit Of Insurance;
        (2) At our discretion, we may investigate any "occurrence" and settle any resulting "claim" or "suit";
        (3) We have a right and duty to defend the insured against any "suits" to which this insurance applies:
            (a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or
            (b) If the applicable limit of "underlying insurance" is exhausted.
            However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; and
        (4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.
        No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II -- Defense.
    b. It is agreed that this insurance only applies if:
        (1) The "bodily injury" or "property damage" occurs during the policy period of this policy;
        (2) With respect to your liability (other than under a contract) for "bodily injury" to your "employees" arising out of and in the course of their employment by you:
            (a) Any "bodily injury" by disease is caused or aggravated by the conditions of that employment; and
            (b) An "employee's" last day of last exposure to conditions causing or aggravating such disease occurs during the policy period of this policy; and
        (3) The "bodily injury" or "property damage" is caused by an "occurrence", and such "occurrence" takes place in the "coverage territory".
        (4) Prior to the policy period, no insured listed under Paragraph 1. of Section III -- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section III -- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

Copyright, Insurance Services Office, Inc.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section III – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. "Ultimate net loss" because of "bodily injury" includes damages sought by any person or organization for care or loss of services resulting at any time from the "bodily injury".

2. Exclusions. This insurance does not apply to:

   a. "Bodily injury" or "property damage" either expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

         (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; and

         (c) The indemnitor insured's "underlying insurance" also deems these expenses to be damages.

   c. Liability imposed on the insured or the insured's insurer, under any of the following laws:

      (1) Employees' Retirement Income Security Act of 1974 (E.R.I.S.A.) as now or hereafter amended, or any similar state or other governmental law;

      (2) Any uninsured motorists, underinsured motorists, or automobile no-fault or first party "bodily injury" or "property damage" law; or

      (3) Any workers compensation, unemployment compensation or disability benefits law or any similar law.

   d. The insured's liability (other than under an "insured contract") for "bodily injury" to:

      (1) An "employee" of the insured arising out of and in the course of:

         (a) Employment by the insured; or

         (b) Performing duties related to the conduct of the insured's business; or

      (2) The spouse, child, parent, brother or sister, or other dependents of that "employee" as a consequence of d.(1) above.

      But this exclusion d.(1) and d.(2) applies only with respect to:

      (1) "Bodily injury" to any person in work subject to the Longshore and Harbor Workers Compensation Act (33 USC Sections 901-950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), and any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

      (2) "Bodily injury" to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an "employee" due to "bodily injury" arising out of or in the course of employment, or any amendments to those laws;

      (3) "Bodily injury" to a master or member of the crew of any vessel;

      (4) Fines or penalties imposed for violation of federal or state law;

(5) Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws;

(6) Punitive or exemplary damages because of "bodily injury" to any "employee" employed in violation of law;

(7) "Bodily injury" to an "employee" while employed in violation of law with the insured's actual knowledge or the actual knowledge of any of your "executive officers"; and

(8) "Bodily injury" to an "employee" if such employment is subject to the workers compensation laws of the states of Massachusetts, Missouri, New Jersey, New York or any other state which requires unlimited Employers Liability coverage in conjunction with primary Workers Compensation policies.

This exclusion d. applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such injury.

With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of their employment by you, exclusions f., g., and h. do not apply.

e. "Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Failure to promote an employee;

(c) Discipline, demotion, negligent evaluation or negligent reassignment;

(d) Termination of that person's employment;

(e) Employment-related practices, policies, acts or omissions, including, without limitation, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(f) Oral or written publication of materials that slanders, defames or libels an "employee" or violates or invades an "employee's" right of privacy.

(2) The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraph e.(1) above is directed.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

f. Pollution:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants":

(a) That are, or that are contained in any property that is:

(i) Being transported or towed by, handled, or handled for movement into, onto or from an "auto" covered by "underlying insurance";

(ii) Otherwise in the course of transit by or on behalf of the insured; or

(iii) Being stored, disposed of, treated or processed in or upon an "auto" covered by "underlying insurance";

(b) At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured. However, this subparagraph f.1.(b) does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than the additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

     Copyright, Insurance Services Office, Inc.

(c) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(d) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph f.(1)(e) does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(f) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

(b) "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

(3) Exceptions:

(a) Paragraphs f.(1)(a) through f.(1)(e) of this exclusion do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" covered by "underlying insurance", or the parts of such an "auto", if:

    (i) The pollutants escape or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants; and

    (ii) The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in paragraphs f.(2) and f.(3) of the definition of "mobile equipment".

(b) Paragraphs f.(1)(c) through f.(1)(f) of this exclusion do not apply to pollutants that are not in or upon an "auto" covered by "underlying insurance" if:

    (i) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" covered by "underlying insurance"; and

    (ii) The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage.

 Copyright, Insurance Services Office, Inc.

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or chartered, rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrong doing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of aircraft, or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) Watercraft while ashore on premises you own or rent;

(2) Watercraft you do not own that are:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge; or

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

h. "Bodily injury" or "property damage" arising out of the use of any "mobile equipment" or "auto" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i. Liability assumed under any "insured contract" for "bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

j. "Property damage" to:

(1) Property you own, rent, or occupy; including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of any insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph j.(2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs j.(3), j.(4), j.(5) and j.(6) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph j.(6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.  "Bodily injury" arising out of "personal and advertising injury."

p.  "Bodily injury" or "property damage" arising out of:

   (1) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

   (2) The use of asbestos in constructing or manufacturing any goods, product or structure;

   (3) The removal of asbestos from any goods, product or structure;

   (4) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

   (5) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with actions described in subparagraphs p.(1) through p.(4) of this exclusion; or

   (6) Any obligation to share damages with or repay someone else who must pay damages in connection with actions described in parts p.(1) through p.(5) of this exclusion.

q.  "Bodily injury" or "property damage" arising out of any form of lead or lead compounds. In addition, this insurance does not apply to any loss, cost or expense arising out of:

   (1) Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

   (2) Any "claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

   (3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

   (4) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

r.  "Bodily injury" or "property damage" arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

s.  Any obligation arising out of the administration of any employee benefit plan.

t.  Any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

u.  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

   (1) Causing or contributing to the intoxication of any person;

   (2) The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

   (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion u. applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

v.  "Bodily injury" or "property damage":

   (1) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

      (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

      (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

   (3) Resulting from the "hazardous properties" of "nuclear material", if:

      (a) The "nuclear material":

      (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

      (ii) Has been discharged or dispersed therefrom;

    (b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" include radioactive, toxic or explosive properties;

(2) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(5) "Waste" means any waste material:

    (a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    (b) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility";

(6) "Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for:

      (i) Separating the isotopes of uranium or plutonium;

      (ii) Processing or utilizing "spent fuel"; or

      (iii) Handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

Coverage B. Personal And Advertising Injury Liability

1. Insuring Agreement

    a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

      (1) The amount we will pay for the "ultimate net loss" is limited as described in Section IV – Limit Of Insurance;

      (2) At our discretion, we may investigate any offense and settle any resulting "claim" or "suit";

      (3) We have a right and duty to defend the insured against any "suits" to which this insurance applies:

        (a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

        (b) If the applicable limit of "underlying insurance" is exhausted.

 Copyright, Insurance Services Office, Inc.

However, we will have no duty to defend the insured against any "suits" seeking damages for "personal and advertising injury" to which this insurance does not apply; and

(4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.

No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II – Defense.

b. This insurance applies only to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions. This insurance does not apply to:

   a. "Personal and advertising injury"

      (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

      (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

      (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

      (4) Arising out of a criminal act committed by or at the direction of any insured;

      (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

      (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

      (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

      (8) Arising out of the inaccurate description of the price of goods, products or services stated in your "advertisement";

      (9) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

      However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

      (10) Committed by an insured whose business is:

         (a) Advertising, broadcasting, publishing or telecasting;

         (b) Designing or determining content of web-sites for others; or

         (c) An Internet search, access, content or service provider.

      However, this exclusion does not apply to Paragraphs 16.a., b. and c. of "personal and advertising injury" under the Definitions Section.

      For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

      (11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

      (12) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

      (13) Arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants" at any time;

      (14) Arising out of:

         (a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

         (b) The use of asbestos in constructing or manufacturing any good, product or structure;

         (c) The removal of asbestos from any good, product or structure;

         (d) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

         (e) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts (14) (a) through (14) (d) of this exclusion; or

 Copyright, Insurance Services Office, Inc.

(f) Any obligation to share damages with or repay someone else who must pay damages in connection with parts (14) (a) through (14) (e) of this exclusion.

(15) Arising out of any form of lead or lead compounds. In addition, any loss, cost or expense arising out of:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

    (b) "Claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

    (c) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

    (d) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

(16) Arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

(17) Arising out of any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

(18) To:

    (a) A person arising out of any:

        (i)   Refusal to employ that person;

        (ii)  Failure to promote an employee;

        (iii) Discipline, demotion, negligent evaluation or negligent reassignment;

        (iv) Termination of that person's employment;

        (v)  Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

        (vi) Oral or written publication of materials that slanders, defames or libels an "employee" or violates or invades an "employee's" right of privacy.

    (b) The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraph (18) (a) of this exclusion were directed.

    (c) This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "personal and advertising injury".

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

(2) "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Section II Defense

1. When we have the duty to defend, or we investigate or settle any offense, "occurrence", "claim" or "suit", and then only to the extent that "underlying insurance" is not responsible for the costs shown below in items a. through f., we will pay on behalf of the insured:

a. Up to $250 for cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

d. All costs taxed against the insured in any "suit" we defend.

 Copyright, Insurance Services Office, Inc.

e. "Pre-judgment interest" awarded against the insured on that part of any judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a "claim" or "suit", we will not pay for any "pre-judgment interest" imposed or earned after the date of such offer.

f. All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

2. Payments under this section of the policy, as well as payments for all expenses we incur, will not reduce the Limit of Insurance.

3. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the offense or "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

   So long as the conditions in this subparagraph f. are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid under Section II – Defense. Notwithstanding the provisions of paragraph 2.b.(2) of Coverage A. – Bodily Injury And Property Damage Liability (Section I – Insuring Agreements), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

4. Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses under Section II – Defense ends when:

   a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

   b. The conditions set forth above, or the terms of the agreement described in paragraph 3.f. above, are no longer met by the indemnitee.

Section III Who Is An Insured

1. If you are designated in the Declarations as:

   a. An individual, you, as a natural person, and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Except with respect to any "auto", your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, or joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

 Copyright, Insurance Services Office, Inc.

e.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Except with respect to any "auto" or any "mobile equipment" registered in your name under any motor vehicle registration law, each of the following is also an insured:

a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for :

(1)  "Bodily injury" or "personal and advertising injury":

(a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b)  To the spouse, child, parent, brother or sister, or other dependent of that co-"employee" as a consequence of paragraph 2.a.(1)(a) above;

(c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 2.a.(1)(a) or 2.a.(1)(b) above; or

(d)  Arising out of his or her providing or failing to provide professional health care services.

(2)  "Property damage" to property:

(a)  Owned, occupied or used by; or

(b)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.  Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager

c.  Any person or organization having proper temporary custody of your property if you die, but only:

(1)  With respect to liability arising out of the maintenance or use of that property; and

(2)  Until your legal representative has been appointed.

d.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

e.  Any person or organization qualifying as an insured under any policy of "underlying insurance".

(1)  Coverage afforded such insureds under this policy applies only to injury or damage:

(a)  Which is covered by this policy; and

(b)  Which is covered by the "underlying insurance" or would be covered but for the exhaustion of such policy's limits of insurance.

(2)  This policy shall not afford such person or organization limits of insurance in excess of:

(a)  The minimum limit of insurance you agreed to provide; or

(b)  The limit of insurance under this policy,

whichever is less.

f.  Any person or organization for whom you have agreed in writing prior to any "occurrence" or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you. This policy shall not afford such person or organization limits of insurance in excess of:

(1)  The minimum limit of insurance you agreed to provide; or

(2)  The limit of insurance under this policy,

whichever is less.

3.  With respect to any "auto" or any "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while operating such "auto" or "mobile equipment" with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the "auto" or registered "mobile equipment".

However, except with respect to your partners, "employees", or members of their households, the owner or anyone else from whom you hire or borrow an "auto" is an insured only if that "auto" is a trailer connected to an "auto" you own.

But no person or organization is an insured under this paragraph 3. for:

a. "Bodily injury" to a co-"employee" of the person operating the "auto" or "mobile equipment";

b. "Property damage" to property owned by the employer of any person who is an insured under this provision;

c. Any "auto" you hire or borrow from one of your partners, "employees" or members of their households, if they are the owner of such "auto", unless:

   (1) Insurance is afforded to that owner for such "auto" by "underlying insurance", or would be afforded under such "underlying insurance" but for exhaustion of such policy's limits of insurance; or

   (2) Such "auto" is a trailer connected to an "auto" you own;

d. Any "auto" being used by a person employed in the business of selling, servicing, repairing, or parking "autos" unless they are your "employee"; or

e. The movement of property to or from an "auto" except your "employees" or partners, the lessees or borrowers of such "auto", and any "employees" of such lessees or borrowers.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a named insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period set forth in the Declarations, whichever is earlier;

   b. Coverage is applicable only in excess of the Limits of "underlying insurance" as shown in Item 7 of the Declarations, and you must add such organization to your "underlying insurance" as soon as practicable, advising us of such additions. We may then make adjustment of premium charges as called for in Condition 9 – Maintenance of Underlying Insurance;

   c. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   d. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

Section IV  Limit Of Insurance

1. The Policy Aggregate Limit shown in Item 4 of the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. "Claims" made or "suits" brought; or

   c. Persons or organizations making "claims" or bringing "suits".

2. The Policy Aggregate Limit is the most we will pay for:

   a. All "ultimate net loss" under Coverage A and Coverage B combined, except "ultimate net loss" because of injury and damage arising from the "automobile hazard"; and

   b. Each "occurrence" with regard to "ultimate net loss" because of injury and damage arising from the "automobile hazard".

3. If the Policy Aggregate Limit is paid prior to this policy's termination date for losses other than losses arising from the "automobile hazard", this policy's premium is fully earned.

4. The Policy Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

Section V  Conditions

1. Appeals. In the event the insured or any "underlying insurer" elects not to appeal a judgment for damages covered by this policy and which exceeds the "retained limit", we may elect, but have no duty, to do so. We shall be liable, in addition to the Limit of Insurance, for all costs and expenses incurred and interest on

Copyright, Insurance Services Office, Inc.

judgments incidental to such an appeal and for all such costs, expenses and interest on appeals in connection with our right and duty to defend the insured under this policy.

2.  Bankruptcy. Bankruptcy, insolvency, or receivership of the insured, the insured's estate or of any "underlying insurer" will not relieve us of our obligations under this policy. With regard to bankruptcy, insolvency, or receivership of any "underlying insurer", this policy shall not apply as a replacement of such bankrupt or insolvent insurer and our Limits of Insurance will apply only in excess of the required Limit(s) of Insurance stated in Item 7 of the Declarations of this policy.

3.  Cancellation.

    a.  The first named insured shown in the Declarations may cancel this policy by delivering it to us or any of our authorized agents or by sending us written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to us or upon such future date requested by the first named insured.

    b.  We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:

        (1)  Ten (10) days before the effective date of cancellation if we cancel because of nonpayment of premium whether payable directly to us or payable to our agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan; or

        (2)  Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

    c.  We will mail or deliver our notice to the first named insured's last mailing address known to us.

    d.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    e.  If this policy is canceled, we will send the first named insured any premium refund due. If we or the first named insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered any refund of unearned premium.

    f.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  Changes. This policy contains all the agreements between you and us concerning the insurance afforded. The first named insured shown in the Declarations is authorized to make changes in the terms of this policy upon our giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by us and made a part of this policy.

5.  Duties In The Event Of Occurrence, Offense, Claim Or Suit.

    a.  You must see to it that we or our authorized representative are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

        (1)  How, when, and where the "occurrence" or alleged offense took place;

        (2)  The insured's name and address;

        (3)  The names and addresses of any injured persons or witnesses; and

        (4)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

        Notice of an "occurrence" or an offense is not notice of a "claim".

    b.  If a "claim" is made or "suit" is brought against any insured, you must:

        (1)  Immediately record the specifics of the "claim" or "suit" and the date received; and

        (2)  Notify us as soon as practicable.

        You must see to it that we also receive written notice of the "claim" or "suit" as soon as practicable.

    c.  You and any other insured involved in such "claim" or "suit" must:

        (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

        (2)  Authorize us to obtain records and other information;

        (3)  Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

        (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

    e.  No insureds shall in any way jeopardize our rights after an "occurrence" or offense.

6.  Examination of Your Books and Records. We may examine and audit your books and records as they relate to this policy at any time during the policy period set forth in the Declarations and up to three years afterward.

7. Inspection and Surveys.
    a. We have the right but are not obligated to:
        (1) Make inspections and surveys at any time;
        (2) Give you reports on the conditions we find; and
        (3) Recommend changes to such conditions.
    b. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We also do not warrant that conditions:
        (1) Are safe or healthful; or
        (2) Comply with laws, regulations, codes or standards.
    c. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.
8. Legal Action Against Us.
    a. No person or organization has a right under this policy:
        (1) To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
        (2) To sue us under this policy unless all of its terms have been fully complied with.
    b. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.
9. Maintenance of Underlying Insurance.
    a. You must keep the "underlying insurance" described in Item 7 of the Declarations, or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. You must also inform us within 30 days of any termination of any policy of "underlying insurance", or replacement of any policy of "underlying insurance".
    b. You must notify us immediately of any changes to the terms of any "underlying insurance" policies. We may adjust premium charges under this policy from the effective date of such changes to the terms of any "underlying insurance".
    c. Your failure to comply with the foregoing paragraphs 9.a. and 9.b. will not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.
10. Other Insurance. If other valid and collectible insurance is available to the insured for "ultimate net loss" we cover under this policy, our obligations under this policy are limited as follows:
    a. This insurance is excess over:
        (1) Any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance; and
        (2) Any other insurance available to the insured, whether primary or excess, covering liability for damages arising out of premises or operations for which you have been added as an additional insured.
    b. We will indemnify only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:
        (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
        (2) The total of all deductible and self-insured amounts under this or any other insurance.
    c. We will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers in accordance with provisions of Condition 16 below.
11. Premium Audit.
    a. We will compute all premiums for this policy in accordance with our rules and rates.
    b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first named insured. If the sum of the advance and audit premiums paid for the policy term is

greater than the earned premium, we will return the excess to the first named insured, but not if such audit premium is less than the Minimum Premium shown in the Declarations.

  c.  The first named insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

12. Premiums. The first named insured shown in the Declarations:

  a.  Is responsible for the payment of all premiums; and

  b.  Will be the payee for any return premiums we pay.

13. Representations. By accepting this policy, you agree that:

  a.  The information shown on the Declarations is accurate and complete;

  b.  The information is based upon representations you made to us in your application(s) for this policy;

  c.  We have issued this policy in reliance upon your representations; and

  d.  Except as otherwise provided in this policy or by law, this policy is void if you conceal or misrepresent any material facts concerning this policy, in your application for this policy or otherwise.

14. Separation of Insureds. Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies:

  a.  As if each named insured were the only named insured; and

  b.  Separately to each insured against whom "claim" is made or "suit" is brought.

15. Sole Agent. The named insured first shown in Item 1 of the Declarations is authorized to act on behalf of all insureds with respect to giving or receiving notice of cancellation or nonrenewal, receiving refunds, and agreeing to any changes in this policy.

16. Transfer Of Rights Of Recovery Against Others To Us.

  a.  If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

  b.  Any recoveries shall be applied first to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder; and lastly to reimburse such interests (including the insured) as to which this policy is excess, as are entitled to the residue, if any.

  c.  When we assist in pursuit of the insured's rights of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

  d.  If there should be no recovery as a result of proceedings instituted solely at our request, we shall bear all expenses of such proceedings.

17. Transfer of Your Rights and Duties Under This Policy.

  a.  Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

  b.  If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

18. When Loss Payable. Our liability for any portion of "ultimate net loss" shall not apply until the insured or any "underlying insurer" shall be obligated to actually pay the full and complete amount of the "retained limit". When "ultimate net loss" has been finally determined, the insured may make "claim" for payment under this policy as soon as practicable thereafter. Such insured's obligation to pay any amount of "ultimate net loss" must have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant or the claimant's legal representative and us.

19. When We Do Not Renew.

  a.  If we decide not to renew this policy, we will mail or deliver to the first named insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date or such other period as may be required by law.

  b.  If notice is mailed, proof of mailing will be sufficient proof of notice.

Section VI  Definitions

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporter is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. However, "auto" does not include "mobile equipment".

3. "Automobile hazard" means liability arising out of the ownership, maintenance, use or entrustment of any "auto". Use includes operation and "loading or unloading".

4. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

5. "Claim" means any demand upon the insured for damages or services alleging liability of the insured as the result of an "occurrence" or offense.

6. "Coverage territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit" on the merits, brought in the United States of America (including its territories and possessions), Puerto Rico or Canada, or in a settlement we agree to.

7. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

9. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

10. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or by your fulfilling the terms of the contract or agreement.

11. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of a contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement; or

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

       Paragraph 11.f. does not include that part of any contract or agreement:

       (1) That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

       (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

           (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

           (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

 Copyright, Insurance Services Office, Inc.

     (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in 11.f.(2) above and supervisory, inspection, architectural or engineering activities :

     (4) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

     (5) That holds a person or organization engaged in the business of transporting property by "auto" for hire, harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

12. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

13. "Loading or unloading" means the handling of property:

  a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  b. While it is in or on an aircraft, watercraft or "auto"; or

  c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

14. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  b. Vehicles maintained for use solely on or next to premises you own or rent;

  c. Vehicles that travel on crawler treads;

  d. Vehicles, whether self-propelled or not, on which are permanently mounted:

     (1) Power cranes, shovels, loaders, diggers or drills; or

     (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

  e. Vehicles not described in a., b., c., or d. immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     (2) Cherry pickers and similar devices used to raise or lower workers;

  f. Vehicles not described in a., b., c., or d. of this section maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

     (1) Equipment designed primarily for:

       (a) Snow removal;

       (b) Road maintenance, but not construction or resurfacing; or

       (c) Street cleaning;

     (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

15. "Occurrence" means:

  a. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you; or

  b. With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you, "bodily injury" caused by accident or disease.

16. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

Copyright, Insurance Services Office, Inc.

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

17. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, without limitation, materials to be recycled, reconditioned or reclaimed.

18. "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

19. "Products-completed operations hazard":

    a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed;

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

            (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b.  Does not include "bodily injury" or "property damage" arising out of:

        (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

        (3) Those products or operations for which the applicable classification, under a policy of "underlying insurance", states that products-completed operations are subject to that policy's General Aggregate Limit.

20. "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on created or used on, or transmitted to or from computer software, including systems and application software, hard or floppy disks, CD-ROMS, tapes drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

21. "Retained limit" means the greater of:

    a.  The sum of amounts applicable to any "claim" or "suit" from:

        (1) "Underlying insurance", whether such "underlying insurance" is collectible or not; and

        (2) Other collectible primary insurance; or

    b.  The "self-insured retention".

22. "Self-insured retention" means the amount in Item 4 of the Declarations.

23. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or submits with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured must submit or submits with our consent.

24. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

25. "Ultimate net loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage" or "personal and advertising injury". "Ultimate net loss" must be fully determined as shown in Condition 18 – When Loss Payable. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by any insured, by us or by any "underlying insurer".

26. "Underlying insurance" means the coverage(s) afforded under insurance policies designated in Item 7 of the Declarations and any renewals or replacements of those policies.

27. Underlying insurer" means any company issuing any policy of "underlying insurance".

28. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

29. "Wrongful act" means any actual or alleged error, misstatement or misleading statement, act, omission or neglect or breach of duty by a director or "executive officer" in discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being directors or officers of your business.

    "Wrongful act" does not include "bodily injury", "property damage" or "personal and advertising injury" as defined in this coverage form.

30. "Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

31. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2) The providing of or failure to provide warnings or instructions.

Conditions Applicable To State Automobile Mutual Insurance Company

1. Dividends. You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its by-laws.

2. Notice of Policyholders Meetings. While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at

CXS 00 01 10 02                 Copyright, Insurance Services Office, Inc.                   Page 19 of 20

9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office, 518 East Broad Street, Columbus, Ohio.

3.  Non-assessable. This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of the premium other than that stated in this policy.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at Columbus, Ohio and countersigned on the Declarations Page by our duly authorized agent of the State Auto Insurance Companies.

John R Lowther

Robert H Moore

Secretary

President

Copyright, Insurance Services Office, Inc.