# Exhibit "G"



1395

# Agency Agreement

Effective Date: January 1, 2002

This Agency Agreement ("Agreement") made effective as of the date set forth above is between the Company and the Agent (each as defined below). The Company is understood to mean such current or future members of the State Auto Insurance Companies which underwrite business submitted by Agent. The Agent is understood to mean the following person(s), entity or group of entities identified below:

Code. No.   Name
01395       Aronov Insurance Inc, Montgomery, AL

Company and Agent hereby agree to the appointment of Agent under this Agreement, subject to all applicable laws and regulations of the state or states in which the Agent is authorized to sell insurance, and further subject to the terms and conditions set forth herein.

FOR THE AGENT

By: _____

Title: President

FOR THE COMPANY

_____
John M. Petrucci,
Vice President
State Auto Insurance Companies

### A. AUTHORITY OF AGENT

The Agent, as an independent contractor, and not as an employee of the Company, subject to requirements imposed by law, the terms and conditions of this Agreement, and the underwriting rules and regulations of the Company, is authorized to:

1. Solicit, receive and transmit to the Company proposals for insurance contracts involving only the lines of property casualty insurance listed on the Schedule of Agent Authority, which is attached to and made a part of this Agreement. For such insurance contracts a commission is payable in accordance with the commission schedule from time to time promulgated by the Company and in effect at the time of the Company's acceptance of the insurance upon which the commission is to be computed.

2. Bind and execute insurance contracts, except as otherwise expressly provided by the Company.

3. Provide all usual and customary services of an insurance agent on all insurance contracts placed by the Agent with the Company.

4. Collect, receive and receipt for premiums and remit same to the Company, in accordance with Company rules and regulations for the various lines of insurance. The Agent agrees to refund return commissions on policy cancellations or reductions, in each case at the same rate at which such commissions were originally retained.

5. Exercise exclusive and independent control of Agent's time and the conduct of Agent's agency.

6. Nothing contained in the Agent's authority shall be construed as restricting the right of the Company to decline to accept or renew or to cancel any policy or policies issued under this Agreement in a manner consistent with applicable law. Also, the Company reserves the right to restrict in writing any part or all of the Agent's authority previously set forth, as part of a rehabilitation plan or otherwise, but such restrictions shall not operate to cancel this Agreement nor to relieve the Agent of any of Agent's obligations and duties to the Company arising either under this Agreement or otherwise.

### B. DUTIES OF AGENT

The Agent agrees to:

1. Adhere to all the published instructions, restrictions, rules and regulations of the Company and any special instructions that may be issued by the Company.
2. Forward to the Company copies of all applications, binders, policies, certificates and endorsements issued by the Agent, or otherwise notify the Company of all liability accepted, not later than the fourth business day following the inception date of coverage.
3. Account for and pay to the Company premiums in accordance with the accounting procedures set forth in writing from time to time as the Agency Accounting Rules and Procedures.
4. Fulfill the obligations of an insurance agent as commonly agreed upon within the insurance industry, including, but not limited to, providing proper service to policyholders.
5. Fulfill the obligations of a predecessor agent in the event the Agent has purchased or otherwise succeeded to the ownership of a book of business of the Company formerly owned by another agent of the Company.

### C. OWNERSHIP OF EXPIRATIONS

Except as otherwise provided in this Section C and in Subsection K.5. in the event of termination of this Agreement and provided the Agent has accounted for and paid to the Company all premiums, return commissions and other monies collected for or owed to the Company, the Agent's records, including the use and control of expirations, shall be deemed the property of the Agent and left in Agent's undisputed possession.

If all premiums, return commissions and other monies collected for or owed to the Company, under this Agreement or otherwise, have not been accounted for or paid to the Company or if the Agent is in breach of this Agreement as set forth in Section M below, the records, use and control of all expirations shall be vested in, and shall be the sole and exclusive property of, the Company, which shall have the right to take immediate possession on demand and without judicial process of all expirations, policies, manuals, documents, accounts receivable and commissions on direct billed policies in the control of the Agent which relate to policies placed by the Agent with the Company (such expirations, policies, manuals, documents, accounts receivable, and commissions on direct billed policies are hereafter referred to as the "State Auto Book of Business"). In the event the Company exercises its right of possession the Agent agrees to assemble the State Auto Book of Business and to make it immediately available to the Company at a place to be designated by the Company. In the event the Agent fails to assemble such State Auto Book of Business within the time frame set by the Company in its notice to Agent or in the event the Company elects to do so, the Company may assemble from its records information substantially equivalent to such State Auto Book of Business and utilize it as said Book of Business. Subject only to standards of commercial reasonableness, the Company may choose in its absolute discretion the manner, time, place and terms of any disposition of the State Auto Book of Business delivered to it or otherwise acquired. The Agent shall be entitled to any surplus, and shall remain liable for any deficiency, in the proceeds of disposition of the State Auto Book of Business following payment of the Company's expenses in retaking, selling, servicing, or transferring said Book of Business and the satisfaction of all indebtedness owed by the Agent to the Company under this Agreement or otherwise. Agent understands and agrees that once the Company has taken control of the State Auto Book of Business under this provision, Agent has no right to have the State Auto Book of Business returned even though the outstanding indebtedness owed by Agent to the Company may have been paid in full prior to the disposition of the State Auto Book of Business by the Company. The Agent and Company agree that the State Auto Book of Business has no fixed value nor can its value necessarily be determined by application of a formula.

### D. OTHER LICENSEES

Upon the request and recommendation of the Agent, the Company may license individual producers to operate under the terms of this Agreement and the code number assigned to the Agent by the Company. The Agent shall be responsible for the obligation of such individuals so licensed to comply with all applicable terms of this Agreement, including, without limitation, those incorporated herein by reference and the duties imposed by law. To the extent that an Agent's individual producer, not licensed with the Company, is deemed to be an agent of the Company as a result of state law or

regulation, the Agent shall be responsible if such individual producer contravenes the terms of this Agreement, including, without limitation, those incorporated herein by reference, or applicable law.

E. COMMISSIONS

It is agreed that:

1. The Agent will accept and the Company will pay as full compensation for all services rendered under this Agreement the percentages of commissions as from time to time promulgated by the Company.

2. No reduction may be effective as to any rate of commission until such rate of commission has been in effect at least twelve (12) months. The Company shall give the Agent not less than ninety (90) days' written notice before a reduction in any rate of commission is to become effective.

3. The terms of this Agreement shall not prohibit:
   a. The negotiation of special commission rates on individual policies by mutual agreement.
   b. A reduction or increase in any rate of commission, by mutual agreement, with or without the specified advance notice.
   c. Establishment of any commission rate for a new policy or product, even if less than twelve (12) months have elapsed since the reduction of a commission rate applying to an associated coverage.
   d. The reduction of all commissions in accordance with Subsection K.6.d. hereof following termination of this Agreement.

F. INDEMNIFICATION OF AGENT

1. The Company shall indemnify and hold the Agent harmless against any claims or liabilities the Agent may become obligated to pay to or on behalf of any insured of the Company or any applicant for insurance with the Company based on (1) actual or alleged error of the Company in its handling of any matter pertaining to a policy of insurance or a bond placed by the Agent with the Company or an application therefor, except to the extent the Agent caused or contributed to such error, and (2) the actions or inactions of the Agent based on the Agent's use of forms or procedures as directed by the Company, including without limitation, compliance with the Fair Credit Reporting Act, as amended from time to time, and other federal and state laws of similar purpose. The Company shall also reimburse the Agent for any legal or other expenses reasonably incurred by the Agent in connection with the Agent's investigating or defending any such claim or alleged liability which is subject to such indemnification, providing the Agent complies with the notice provisions below.

2. The Agent shall promptly notify the Company when the Agent receives notice of the commencement of any action or proceeding relating to such claim or alleged liability, and the Company shall be entitled to participate in such action or proceeding, or to assume the defense of such action or proceeding with counsel satisfactory to the Agent. If the Company assumes the defense of any such action or proceeding, it shall not be liable to the Agent for any legal or other expenses subsequently incurred by the Agent in connection with such action or proceeding.

3. Notwithstanding the foregoing in this Section F, if the Company is held legally liable for damages arising out of the gross negligence of the Agent or a person for whom the Agent is legally responsible, the Company shall be entitled to obtain indemnification from the Agent for such damages and expenses incurred by the Company.

G. AUDITS AND VOLUNTARY REPORTS

1. The Agent shall collect any interim or final additional premiums developed by audit, reporting form policies on policies other than Direct Billed Policies, or renewal premiums on non-cancelable bonds (collectively "Audit Premiums"), and remit the same to the Company less the Agent's commission as herein provided. If Audit Premiums cannot be collected by the Agent, the Company shall undertake direct collection and the Agent shall not be responsible for Audit Premiums, provided:
   a. The amount of uncollected Audit Premiums under any one policy exceeds Five Hundred Dollars;
   b. The Agent has made a reasonable effort to collect Audit Premiums and has provided the Company with written documentation to this effect. Failure of the Agent to give the Company such written documentation of Agent's inability to collect Audit Premiums shall constitute acceptance by the Agent of responsibility to pay Audit Premiums;
   c. The Agent notifies the Company in writing within sixty (60) days of the Company's initial date of billing the Agent for Audit Premiums of Agent's inability to collect Audit Premiums; and
   d. No commission shall be paid to the Agent on Audit Premiums collected by the Company.

2. Direct Billed audit premiums not paid by the insured within sixty days of billing will be removed from the Agent's Direct Bill Statements

and pursued as a Company collection item with no commission thereon being payable to the Agent. Any commission pertaining to such unpaid audit premiums and recorded on the Agent's Direct Bill Statements will be reversed and recouped by the Company on subsequent Direct Bill Statements.

3. Any premiums received by Agent not specifically allocated to a particular policy by a policyholder shall be allocated to audit premiums due the Company.

H. POLICY CANCELLATION AND NON-RENEWAL

Subject to requirements imposed by law and compliance with the applicable provisions contained in this Agreement and within the policy:

1. The Company shall have the right to refuse to write a policy, cancel a policy or decline renewal of a policy.

2. At the Agent's request, the Company shall cancel a policy or decline to renew a policy, subject to requirements imposed by law on such transaction.

I. ADVERTISING

1. Subject to Subsection M.6 below, the Company shall not use the Agent's policyholder information or records for solicitation of other insurance products or services without written authorization from the Agent.

2. The Agent shall not use the name of the Company or any other trade name or trade mark of the Company in an advertisement without its consent. Any written or broadcast advertising matter mentioning or involving the Company shall be first submitted to the Company for its consent in writing before publication or broadcast thereof.

J. AGENCY TRANSFER

The Agent agrees to give advance notice to the Company of any sale, merger, consolidation or other transfer of the Agent or the Agent's State Auto Book of Business, in order that the Company may, at its election in its sole discretion and with the consent of the parties in interest, enter into a new agency agreement with any proposed successor.

K. TERMINATION OR SUSPENSION

1. This Agreement may be terminated by either of the parties hereto by giving to the other not less than ninety (90) days written notice of the intention to effect such termination; or because of the following:

   a. Automatically, and without notice of any kind, if any public authority cancels, revokes, suspends or declines to renew the Agent's license or certificate of authority ("loss of license").

   b. Immediately upon the Company's giving written notice to Agent, if the Agent commits a breach of fiduciary duty to the Company, engages in fraud or other deceptive or illegal conduct or breaches any provision of this Agreement.

   c. Automatically, and without notice of any kind, on the effective date of the sale, merger, consolidation or other transfer of the Agent or all or substantially all the Agent's assets or any transaction affecting the ownership, management or control of the Agent's State Auto Book of Business, unless otherwise agreed by the parties hereto.

   d. Automatically, and without notice of any kind, if the Agent becomes insolvent or acts under state or federal law to seek protection from creditors.

2. If the Agent fails to pay when due any money owed to the Company under the terms of this Agreement or otherwise, the Company may by written notice to the Agent immediately terminate, suspend or modify any of the provisions of this Agreement or the Agent's authority to whatever extent the Company may elect. This right of the Company extends during the period the Agent remains delinquent in such payment and for such period thereafter as the Company deems appropriate, in its sole discretion.

3. In the event of suspension or termination of this Agreement, the Company, in addition to any other rights granted hereunder or by law, may convert any and all of its policies to Direct Billed Policies.

4. In the event Agent fails to consistently maintain for the State Auto Book of Business the level of service customarily provided to policyholders by agents under the American Agency System ("properly service") or abandons the State Auto Book of Business, the Company may terminate the Agreement on ten days' notice, provided that the Company shall have previously notified Agent at least 30 days prior of specific deficiencies in servicing the Agent's State Auto Book of Business, which deficiencies are not cured during this 30 day period.

5. In consideration of the benefits conferred upon Agent by this Agreement and other good and valuable consideration the sufficiency of which is hereby acknowledged, the Agent covenants that in the event of termination of this Agreement for nonpayment of accounts or any other

indebtedness of the Agent to the Company, or for abandonment of or the failure to properly service the Book of Business, the Agent, for a period of three (3) years from such date of termination, shall not, directly or indirectly, by any means whatsoever:

a. Solicit or accept the solicitation of the insurance business of, or sell insurance to or accept an offer to buy insurance from any insured who was in the Agent's State Auto Book of Business at any time during the six month period ending on the termination date of this Agreement.

b. Induce or attempt to induce any person or entity insured by the Company to cancel any insurance policy with the Company.

c. Disclose any Personal Information (as defined below) regarding any insured or insurance policy of the Company to any person whatsoever.

To the extent that insurance is sold in contravention of paragraph (a) of this Subsection 5, the measure of damages due the Company from the Agent shall be the total amount of commissions paid with respect to such insurance while it remains in force, regardless of whether such commissions are actually received by the Agent. In addition to any other rights or remedies available to the Company for breach of the covenants contained in this Subsection 5, the Company shall be entitled to enforcement by court injunction.

Agent agrees to secure a covenant not to compete and a covenant to maintain confidentiality of the Agent's proprietary, confidential business information, in terms substantially similar to that contained in this Subsection 5, from each employee of the Agent and each independent contractor whose services are utilized by the Agent in the production of insurance business for the Agent.

6. In the event of termination of this Agreement for any reason other than: (i) nonpayment of accounts or any other indebtedness of the Agent to the Company; (ii) abandonment of or failure to properly service the State Auto Book of Business; (iii) illegal conduct; or (iv) loss of license, the Agent agrees that Agent or Agent's designated representative shall continue to properly service existing policies in Agent's State Auto Book of Business and that for such purpose Agent shall become a Limited Agent of the Company subject to the following terms and conditions:

a. Insurance contracts in force on the date of termination of this Agreement shall be continued to normal expiration, or other mutually agreed time, subject to applicable statutory and policy requirements.

b. Such continuation of insurance contracts shall be subject to the Company's underwriting rules and regulations; to the payment of the required premiums when due; and to the proper servicing of such contracts by the Agent.

c. The Agent shall not bind any new risk or renew any policies with inception date after the date of termination of this Agreement or add insurance or increase limits on existing policies without the prior approval of the Company.

d. Following the date of termination of this Agreement, the Company may reduce commissions on all policies remaining with the Company on the Agent's State Auto Book of Business to a rate as from time to time established by the Company unless otherwise specifically agreed in writing between the Company and Agent, subject to any contrary requirement imposed by any applicable state law.

In the event the Agent or Agent's designated representative fails to properly service such policies, the Company reserves the right to service such policies itself or to appoint a third party of its choice to service such policies. In the event the Company exercises such right, Agent agrees to relinquish to the Company all records regarding Agent's State Auto Book of Business, including the use and control of expirations, as payment for the Company's or third party's servicing costs.

7. In the event of termination of this Agreement for reasons of nonpayment of accounts or other indebtedness, illegal conduct, abandonment of or failure to properly service the State Auto Book of Business, or loss of license, Agent agrees that the records, use and control of all expirations shall be vested in the Company in accordance with the provisions of Section C.

8. Paragraphs 5 and 6 of this Section K shall survive termination of this Agreement.

### L. ELECTRONIC COMMUNICATION

The Agent agrees to be bound by and to comply with the Electronic Communication Policy and Procedures as from time to time promulgated by the Company, and which are incorporated herein by reference.

### M. OTHER CONDITIONS

1. The Agent shall have no power or authority to do or engage in the following:

   a. Modify, alter or waive any of the provisions of any policy or endorsement issued by Agent or by the Company, except by a written endorsement which the Agent is authorized by the Company to issue.
   b. Waive or release any of the rights of the Company.
   c. Sign the name of the Company or bind it in any manner whatsoever unless so authorized by the Company in writing.
   d. Adjust or effect settlement of any claims or demands arising under any policy or endorsement issued by the Agent or by the Company, except as otherwise expressly provided by the Company.

2. This Agreement shall be non-exclusive as to territorial rights and shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns. This Agreement or any rights thereunder are not transferable or assignable by either party hereto without the prior written consent of the other party.

3. Any policy forms, manuals and other Company equipment or supplies furnished to the Agent by the Company shall remain the property of the Company and upon demand shall be immediately returned to the Company.

4. All matters arising under this Agreement shall be governed by the laws of the state in which the Company is domiciled.

5. The Company shall have access at all reasonable times to the Agent's books and records for the purpose of determining any fact relating to monies due the Company on business placed with the Company by the Agent.

6. The Company and Agent agree that all customer and consumer nonpublic, personal information ("Personal Information") possessed by the Company or Agent which each shares with the other to enable each to provide services to the other with respect to such customers and consumers, pursuant to the terms of this Agreement, will be kept confidential as required by the Gramm Leach Bliley Act and any applicable regulations promulgated thereunder. The Company and Agent further agree that any Personal Information each receives from the other will be used by such other party only to provide services to or for the Company or Agent, as the case may be, with respect to such consumer or customer, which services may include, but are not necessarily limited to, the marketing of the Company's or Agent's own products or services. The Company and Agent each agree to restrict access to such Personal Information as is provided by one to the other to those employees or agents of the Company or Agent, as the case may be, who have a need to know such Personal Information in order to provide one's service to the other, with respect to such consumer or customer.

7. It is the Agent's responsibility to procure and maintain errors and omissions insurance coverage. Policy limits for such insurance must be adequate as determined by the Company in its sole discretion in light of the additional exposure of maintaining, in accordance with the Electronic Communication Policy and Procedures from time to time promulgated by the Company, original signed documents that are important in protecting the Company's rights in the event of litigation under insurance policies issued or renewed by the Company. The Company may require the Agent to present a certificate of insurance from the Agent's errors and omissions insurer.

8. The failure of the Company to enforce at any time any of the provisions of this Agreement or to require at any time performance by the Agent of any of the provisions shall not be construed to be a waiver of such provisions, nor in any way affect the right of the Company to thereafter enforce each and every such provision.

9. Any notice required or permitted by this Agreement shall be in writing and shall be effective when delivered in person or sent by United States mail at the last known address for the Company or the Agent, as the case may be.

10. The Agent agrees to waive any statutory right to receive advance notice of cancellation or nonrenewal of any insurance policies procured by the Agent.

11. The Schedule of State-specific Provisions is attached to and made a part of this Agreement.

12. This Agreement, the attachments hereto, and the documents incorporated herein by reference contain the entire Agency Agreement between the parties hereto. Any prior Agency Agreements between the Agent and the Company, whether oral or written are deemed replaced by this Agreement. Notwithstanding the foregoing in this paragraph 9, any supplemental agreements between the Agent and the Company entered into as a result of this Agreement (including but not limited to the Quality Performance Agreement) shall be construed and enforced in accordance with their own terms and conditions, with the sole exception that termination of this Agreement shall immediately terminate all such supplemental agreements.



# Schedule of State-Specific Provisions

This Schedule is attached to and made a part of the State Auto Insurance Companies Agency Agreement between the Agent (as defined in the Agreement) and the Company (as defined in the Agreement) provided the Agent is licensed to sell insurance in any of the states listed below:

IF LICENSED IN THE STATE OF FLORIDA, THE AGENT AGREES AS FOLLOWS:

Pursuant to Florida statute 624.425, the Agent hereby authorizes the State Automobile Insurance Companies to imprint the Agency's name on the Company's automated renewal policies pertaining to the Agency.

IF LICENSED IN THE STATE OF MICHIGAN, THE AGENT AGREES AS FOLLOWS:

Section K. TERMINATION OR SUSPENSION is amended to add the following paragraph:

Pursuant to the Michigan Essential Insurance Act and other applicable Michigan Statutes, the Company reserves the right to terminate this Agreement immediately or otherwise immediately terminate the Agent's authority to represent the Company with respect to automobile insurance or home insurance if the Agent submits less than a total of 25 applications for automobile insurance and home insurance within the 12-month period immediately preceding such termination.



## Schedule of Agency Authority

Subject to requirements imposed by law, the terms and conditions of the Agency Agreement to which this Schedule is attached and made a part of, and the underwriting rules and regulations of the Company, the Agent is authorized to solicit, write and bind the Company for only such lines of insurance as are listed below:

ALL LINES OF PROPERTY CASUALTY INSURANCE FOR WHICH THE COMPANY IS LICENSED.