IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 3:06 CV 78-MHT |
| WIREGRASS CONSTRUCTION CO., INC., and THE TRAVELERS INDEMNITY COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

## BRIEF OF TRAVELERS INDEMNITY COMPANY
## IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now Defendant, The Travelers Indemnity Company ("Travelers"), and submits its Statement of Undisputed Facts and Memorandum Brief in Support of Motion for Partial Summary Judgment:

## SUMMARY OF UNDISPUTED FACTS

The underlying claims in this case arose out of the death of Jackson Irving Hatton, Jr., who died on May 9, 2005, while working as an assistant engineer for Macon County at a road-resurfacing project in Macon County. (Exhibit A and B attached to Travelers Evidentiary Submission.) Mr. Hatton died after being struck by a truck owned and operated by David Bulgar, Inc. ("DBI"). (Exhibit A.)

At the time of the accident, DBI was a subcontractor for Wiregrass Construction Company, Inc. ("Wiregrass"), the general contractor for the road construction project. (Doc. 38-1, Bulger Affidavit, p. 1.) On October 15, 2004, Wiregrass entered into a subcontract with DBI for DBI to

haul asphalt for the road construction project. (Doc. 38-1, Bulger Affidavit, p 1.) The subcontract signed by DBI required it to obtain liability insurance that would cover DBI as well as Wiregrass. (Doc. 38-1, Bulger Affidavit, pp. 1-2.) This practice is common in the construction industry, and DBI had been required to obtain the same type of liability insurance pursuant to contracts both before and after the October 2004 subcontract with Wiregrass, which required DBI to add Wiregrass as an additional insured. (Doc. 38-1, Bulger Affidavit, p 2.)

The subcontract between Wiregrass and DBI required DBI to maintain $1,000,000 in commercial general liability coverage and required Wiregrass to be named as "additional insured[]" on DBI's "policies for this project." (Exhibit C, Subcontract, p. 4 §5(b).) The contract further provided that "[DBI's] policy shall be endorsed to specify that his/her insurance will be primary insurance for [Wiregrass] . . . that ha[s] been named as ADDITIONAL INSURED[]." (Exhibit C, Subcontract, p. 4 §5(b).) The subcontract also required DBI to maintain $1,000,000 in automobile liability coverage and required Wiregrass be named as an additional insured and that the insurance be primary. (Exhibit C, Subcontract, p. 5 §5(c).)

Prior to October 2004, DBI had purchased comprehensive general liability, umbrella liability, and automotive liability insurance from State Auto through Aronov Insurance, Inc. of Montgomery, Alabama, and maintained the coverage in order to comply with the insurance provisions of the Wiregrass subcontract. (Doc. 38-1, Bulger Affidavit, pp. 1-2.) To add contracting entities as additional insureds under its policy, DBI, on many occasions - including the occasion related to DBI's subcontract with Wiregrass - merely phoned or e-mailed Mark Keltz, who served as Aronov's contact with DBI, and instructed him to name the contracting entities as additional insureds on its liability policy. (Doc. 38-1, Bulger Affidavit, p, 2.) After receiving a request from DBI, the routine

2

practice of Keltz and Aronov was to issue a Certificate of Insurance to the added insured and to DBI listing the specifics of the liability coverage (Doc. 38-1, Bulger Affidavit, p. 2.) This procedure was followed in regard to the addition of Wiregrass as an additional insured on DBI's policy. (Doc. 38-1, Bulger Affidavit, pp. 1-2.)

The subcontract for the Macon County road resurfacing project was signed on October 15, 2004. (Exhibit C, Subcontract, p. 9.) Prior to the signing of the contract, on October 14, 2004, Wiregrass reminded DBI of its responsibility under the contract to add Wiregrass as an additional insured in a letter dated October 14, 2004. (Doc. 38-1, Harper Affidavit, p. 2) In that letter, Wiregrass also stated that the coverage must be primary and noncontributory, requiring DBI's insurance to pay out first on any claim against Wiregrass related to work performed by DBI. (Doc. 38-1, Harper Affidavit, p. 2) When the October 2004 contract with Wiregrass was signed, DBI contacted Aronov and requested that Wiregrass be added as an additional insured on its policy and Aronov responded with a certificate of insurance confirming the addition. (Doc. 38-1, Bulger Affidavit, p. 2.)

Wiregrass received a certificate of insurance from Aronov Insurance, Inc., naming Wiregrass as the Certificate Holder and stating that Wiregrass was named as an additional insured on DBI's liability policy. (Doc. 38-1, Harper Affidavit, p. 2.) A certificate of insurance is the standard method of proof in the construction industry that liability insurance provisions of contracts have been met. (Doc. 38-1, Harper Affidavit, p. 2.) Wiregrass relied on this certificate as proof that it was listed as an additional insured on DBI's policy and that the policy was primary and noncontributory. (Doc. 38-1, Harper Affidavit, p.3.) Wiregrass did not inquire further into the matter. (Doc. 38-1, Harper Affidavit, p. 4.) Wiregrass never received any communication from DBI or from State Auto

3

indicating that the Certificate of Insurance was not valid or that the insurance was not primary and noncontributory. (Doc. 38-1, Harper Affidavit, p. 4.)

Aronov had binding authority to issue certificates of insurance on behalf of State Auto without consulting State Auto. (Doc. 38-1, Deposition of Mark L. Keltz, p. 127, lines 10-22). Aronov also had the authority to fill out certificates of insurance showing third parties as additional insureds under the State Auto policy without sending a copy to State Auto. (Doc. 38-1, Deposition of Mark L. Keltz, p. 128, lines 2-12). However, in this case, Keltz gave notice to State Auto on August 30, 2004 of its pending issuance of a certificate of insurance to Wiregrass showing Wiregrass as an additional insured on DBI's policy. (See Doc. 38-1, Deposition of Mark L. Keltz, p. 129-130, Defendant St. Paul's Exhibit 1 to Keltz deposition, bates # AR00134.) Aronov sent the certificate of insurance to Wiregrass. (See Doc. 38-1, Deposition of Mark L. Keltz, p. 128.)

On June 13, 2005, Jessica Hatton, as dependant widow and administratrix of the estate of Jackson Irving Hatton, Jr., filed an action against David Bulgar, Inc., among others, for the wrongful death of her husband. (Exhibit A.) That action was filed in the Circuit Court of Macon County, Alabama and is styled Jessica Hatton, as dependent widow and administratrix of the Estate of Jackson Irving Hatton, Jr. v. Macon County, David Bulger, Inc., and Edward Bowman, Circuit Court of Macon County, Alabama CV-05-119. On December 15, 2005, Hatton amended her complaint to allege a claim against Wiregrass, contending that Wiregrass negligently and/or wantonly failed to control traffic within the project area, which resulted in the death of Jackson Hatton. (Exhibit B.)

On January 27, 2006, State Auto filed this declaratory judgment against Wiregrass Construction Company and The Travelers Indemnity Company. (Doc. 1.) State Auto filed amended complaints on March 16, 2006 and March 31, 2006. (Doc. 16 & Doc. 23.) The Travelers Indemnity

4

Company issued insurance policies to Wiregrass and is currently defending Wiregrass. State Auto contends that Wiregrass is not an insured under its policies. Wiregrass also contends that the contract between Wiregrass and DBI is not an insured contract.

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23.

### II.    The Subcontract Between Wiregrass and DBI Is an "Insured Contract" Within the Meaning of the State Auto Policies Issued to DBI.

State Auto relies on the contract exclusion of its policies and argues that the subcontract entered between Wiregrass and DBI is not covered because it is not an "insured contract" within the

meaning of the State Auto policies.[1] In other words, State Auto mistakenly contends that its policies

provide no coverage for DBI with respect to DBI's indemnity obligations to Wiregrass under the

subcontract.

This contention is without merit, as the subcontract meets each and every particular of the

policy definition of "insured contract" which is as follows:

> f.      That part of any contract or agreement pertaining to your business . . . under
> which you assume the tort liability of another party to pay for "bodily injury" or
> "property damage" to a third person or organization. Tort liability means a liability
> that would be imposed by law in the absence of any contract or agreement.

(Exhibit E, bates number SA00042-SA00044, Commercial General Liability policy form CG 00 01

10 01 page 13 of 16.)[2]

A simple coverage analysis of the policy language, as applied to the undisputed facts

surrounding the subcontract, easily demonstrates that the subcontract is indeed an "insured

contract." A step by step analysis is required. The first step is to determine whether the facts meet

the definition's requirement that the subcontract be a "contract or agreement pertaining to your

[DBI's] business. The first paragraph of the subcontract proves that the subcontract demonstrates

that this requirement is met:

> Subcontractor [DBI] shall procure and furnish all materials, labor, supervision,
> equipment, facilities, supplies, licenses, and permits necessary to perform all work
> set forth below in the construction of PROJECT NO. STPOA-4404 (200) located at
> Macon County, Alabama for Contractor and owned by the Alabama Department of
> Transportation.

---

[1]Because State Auto makes this assertion based on exclusionary language in the policy,
State Auto carries the burden of proof. See Jordan v. National Accident Ins. Underwriters Inc., 922
F. 2d 732, 735 (11th Cir. 1991) (applying Alabama law).

[2]The State Auto Business Auto policy contains the same definition of "insured contract."
(See Exhibit F, bates number SA 00132,  Business policy form CA 00 01 10 01 page 10 of 11.)

(Exhibit  C, p. 1)

The second step is whether  the subcontract meets the requirement that "you [DBI] assume the tort liability of another party to pay for 'bodily injury'  or 'property damage' to a third person or organization?"   Again we turn to the provisions of the subcontract:

> 6.    INDEMNITY:        To the extent permitted by law [DBI] shall defend, Indemnify and hold harmless
>
> [Wiregrass] from any and all losses, consequential damages, expenses (Including but not limited to attorneys' and consultants' and experts fees), claims, suits, liabilities, fines, penalties, and remedial or clean-up costs arising out of or in any way related to
>
>> (i)      the performance of the work.
>>
>> (ii)     any breach of this Subcontract by [DBI], or
>>
>> (iii)    any act or omission by [DBI], its invites, or any person performing work directly or indirectly on behalf of [DBI] regardless of whether [Wiregrass] is wholly or partially at fault, but only to the extent caused in whole or part by negligent acts or omissions of  [DBI], anyone directly or indirectly employed by [DBI] or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expenses is caused in part by a party indemnified hereunder. . .

(Exhibit C, § 6).  Subsection (iii) expressly references liability for "negligent acts or omissions," language clearly encompassing tort liability to third parties.

Insurance authorities agree with this analysis.  For example, the nature of an "insured contract" has been explained as follows:

> "Assumption of liability" by the insured is the key to understanding [the definition of "insured contract"]  . . .   in the CGL policy and other liability policies an "assumed" liability is generally understood and interpreted by the courts to mean the liability of a third party, which liability one "assumes" in the sense that one agrees to indemnify or hold the other person harmless.

7

Appleman on Insurance Law and Practice § 132.3 (2d ed. 2004). <u>See also</u> <u>KBL Cable Servs. of the</u> <u>Southwest v. Liberty Mut. Fire Ins. Co.</u>, 2004 Minn. App. 1294, 13 (citation omitted) ("Where courts have found an insured contract, the language expressed a clear intent to indemnify the other party for all tort liability."). Thus, an "insured contract" is simply an indemnity agreement which assumes the indemnitee's tort liability to a third party. The Wiregrass/DBI indemnity agreement is just such an agreement.

Here DBI agreed to "defend, indemnify, and hold harmless" Wiregrass "from any and all claims, suits, liabilities . . . ." Moreover, DBI agreed to provide this protection to Wiregrass, even if Wiregrass was itself at fault. Alabama law enforces such agreements "if expressed in clear and unequivocal language." <u>Industrial Tile, Inc. v. Stewart</u>, 388 So. 2d 171, 176 (Ala. 1980). Thus, the indemnity agreement is not only an enforceable against DBI, it is also an "insured contract" within the meaning of the insurance policy.

## III.   <u>Wiregrass Is an Insured Under The State Auto Policies</u>

### A.   **The doctrines of waiver and estoppel preclude State Auto from denying that Wiregrass is an additional insured.**

Pursuant to authority given Aronov by State Auto, and in keeping with a long standing pattern and practice of dealings with State Auto regarding issuance of certificates of insurance, Aronov (DBI's insurance agency) issued certificates of insurance to Wiregrass, and to DBI. Specifically, Aronov sent certificates to DBI and to Wiregrass showing that Wiregrass was an additional insured under the State Auto general liability and auto liability policies. The certificates cite the State Auto policies, policy number SOC2141652 02 and policy number BAP2095834, and state:

>Wiregrass Construction Co., Inc. is named as an Additional Insured as their interest
>may appear on the Genearal [sic] Liability and Auto Liability policies.

(Exhibit D).    Business records kept in the ordinary course of business of Aronov include

documentation of discussions between Aronov agent, Keltz, and State Auto of the fact that

Wiregrass is an additional insured. Keltz gave notice to State Auto on August 30, 2004 of its

issuance and pending issuance of a certificate of insurance to Wiregrass showing Wiregrass as an

additional insured on DBI's policy. (See Doc. 38-1, Deposition of Mark L. Keltz, Defendant St.

Paul's Exhibit 1 to Keltz deposition, bates number AR00134.)

Under these facts, State Auto has waived any right it might otherwise have that Aronov and

its agent, Mark Keltz, were not authorized to add Wiregrass as an "additional insured" under the

State Auto general liability and automobile policies. Under Alabama law, "waiver" is the intentional

relinquishment of a known right. Dominex, Inc. v. Key, 456 So. 2d 1047, 1058 (Ala.1984); Nelson

v. Vick, 462 So. 2d 935, 937 (Ala.Civ.App.1984). "It is well recognized that the knowledge of an

agent of an insurance company as to matters within the general scope of his authority is knowledge

to the company. United States H. & A. Ins. Co. v. Goin, 197 Ala. 584, 73 So. 117; American Life

Ins. Co. v. Buntyn, 227 Ala. 32, 148 So. 617." Pacific Mut. Life Ins. Co. v. Edmonson, 235 Ala.

365, 371, 179 So. 2d 185, 188-189 (Ala. 1938).

State Auto's authorization to Aronov to issue certificates of insurance to third parties

identified by DBI, and State Auto's authorization to Aronov that such certificates could be issued

to a third party without the prior approval of State Auto, and without notice or copies to State Auto

after issuance of such certificates, constitutes a clear waiver of any right to dispute the additional

insured status of Wiregrass. To the extent that State Auto's policies extend coverage to additional

insureds, Wiregrass is entitled to insured status.

The Alabama doctrine of equitable estoppel also precludes State Auto from denying that Wiregrass is an insured under State Auto's policies. In <u>National Fire Ins. Co. v. Housing Dev. Co.</u>, 827 F.2d 1475 (11th Cir. 1987), the Eleventh Circuit explained the Alabama doctrine of estoppel in the context of a dispute between an insurance company and its insured:

> Estoppel, on the other hand, "is a principle of equity that operates not to create a right nor to impose an obligation, but to prevent an otherwise unjust result. "<u>Williams v. FNBC Acceptance Corp.</u>, 419 So. 2d 1363, 1367 (Ala.1982). The doctrine applies when "a party takes a position in one instance inconsistent with that party's position in another instance, to another's prejudice." Id. The purpose of estoppel is to "promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders [that assertion] contrary to equity and good conscience." <u>Williams,</u> 419 So.2d at 1367 (citations omitted) (quoting <u>Draughon v. General Finance Credit Corp.</u>, 362 So. 2d 880, 884 (Ala.1978)).

<u>Id.</u> at 1480 (11th Cir. 1987).

The elements of the doctrine include:

> "(1)    knowledge of the facts by the party to be estopped;
> (2) intention by the party to be estopped that its conduct be acted upon, or such party acts so that the party asserting estoppel has a right to believe that the conduct is so intended;
> (3)    ignorance by the party asserting estoppel of the true facts; and
> (4)    injurious reliance by the party asserting estoppel on the conduct."

<u>Id.</u> (quoting <u>Bank of Huntsville v. Witcher,</u> 336 So. 2d 1384.) Each of these elements is met under the facts of this case.

First, Aronov agent, Mark Keltz, and the State Auto underwriter discussed the certificate of insurance showing Wiregrass as an additional insured. The underwriter told Keltz that he could not use the words "primary and noncontributing" on the certificate but did not object to issuance of the certificate. (<u>See</u> Doc. 38-1, Defendant St. Paul's Exhibit 1 to Keltz deposition, bates number

10

AR00133.)

Second, by authorizing Aronov to issue the certificate of insurance showing that Wiregrass is an additional insured, State Auto acted in such a way to give DBI and Wiregrass a reasonable belief that the Certificate of Insurance was provided pursuant to Aronov's binding authority as an agent of State Auto.

Third, DBI and Wiregrass were provided copies of the certificate of insurance, as is the normal and routine practice, but were never advised by Aronov or State Auto of any dispute by State Auto that issuance of such certificates was outside the binding authority of Aronov.

Finally, at the inception of the subcontract between DBI and Wiregrass, these insureds relied on Aronov and State Auto to obtain additional insured coverage for Wiregrass for just such unfortunate accidents as the one that took Mr. Hatton's life. Had DBI or Wiregrass known of State Auto's contention that Aronov had no such binding authority, either, and more likely both, could have taken action to assure that the coverage was obtained through some other source. Both DBI's and Wiregrass relied to their detriment on the fact that coverage was in place for Wiregrass as an additional insured under the State Auto policies. DBI relied to the extent that it is now in breach of its subcontract with Wiregrass if the State Auto coverage is not in effect. Wiregrass relied to the extent that before the death of Mr. Hatton, Wiregrass did not exercise its contractual right against DBI to require that DBI provide the negotiated coverage. Under the doctrine of estoppel, detrimental reliance is established by a showing of "a material change of position caused by reasonable reliance upon the party to be estopped." Id. Wiregrass lost an important contract right by relying on the representation of Aronov and State Auto is thereby estopped to deny insured status to Wiregrass.

**B.** **Wiregrass meets the definition of an Additional Insured under the State Auto general liability policy issued to DBI.**

State Auto's commercial general liability policy includes the following additional insured endorsement:

> ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A.   Section II - **Who is An Insured** is amended to include as an insured any person or organization for whom you [DBI] are performing operations when you [DBI] and such person or organization [Wiregrass] have agreed in writing in a contract or agreement that such person or organization [Wiregrass] be added as an additional insured on your [DBI] policy. Such person or organization [Wiregrass] is an additional insured only with respect to liability arising out of your [DBI's] ongoing operations performed for that insured [Wiregrass]. A person's or organizations's status as an insured under this endorsement ends when your [DBI's] operations for that insured are completed.

(Exhibit E, bates number SA00047, Policy Form CG 20 33 10 01 at p. 1 of 1).[3] It is a simple matter to apply these tests to the facts of this case. Wiregrass must meet three requirements under this policy definition:

1.   Was Wiregrass an "organization for which you [DBI] were performing operations?"

ANSWER:   It is undisputed that DBI was present at the accident site -- a roadway Wiregrass was repaving -- by virtue of DBI's subcontract with Wiregrass to supply asphalt on the repaving project. It is undisputed that DBI's truck and driver were performing work under the

---

[3] The State Auto policy defines "you" as the "Named Insured." (Exhibit E, Bates number SA00030, Policy Form CG 00 01 10 01 page 1 of 16.) The policy lists DBI as the "Named Insured." (Exhibit E, bates number SA00005.)

Wiregrass subcontract at the time Jackson Irving Hatton was struck and killed by the DBI truck.

The pleadings filed by State Auto concede this fact. In the Second Amended Complaint, State Auto states: "the decedent [Jackson Irving Hatton] was working at a construction site in Macon County [the Wiregrass construction site subject to DBI's subcontract with Wiregrass] when [the decedent, Hatton] was run over by a vehicle driven by Edward Bowman on behalf of David Bulger, Inc." Doc. 23, Second Amended Complaint, paragraph 8, page 2.

2. Did "you [DBI] and such person or organization [Wiregrass] agree in writing in a contract or agreement that such person or organization [Wiregrass] be added as an additional insured on your [DBI's] policy"?

ANSWER:    Yes. The subcontract between Wiregrass and DBI provides:

[Wiregrass] and the Owner shall be named as ADDITIONAL INSUREDS on [DBI's] policies for this project. [DBI's] policy shall be endorsed to specify that his/her Insurance will be primary insurance for [Wiregrass] and the Owner that have been named as ADDITIONAL INSUREDS.

(Exhibit C, §5(b).)

3. Was DBI performing "ongoing operations for [Wiregrass]" at the time Mr. Hatton was struck and killed?

ANSWER:    This fact is undisputed. See Doc. 23, Second Amended Complaint, paragraph 8, page 2.

4. Does Wiregrass meet the policy requirement that "Such person or organization [Wiregrass] is an additional insured only with respect to liability arising out of your [DBI's] ongoing operations performed for that insured [Wiregrass]"?

ANSWER:    Undisputedly, DBI's "operations performed for Wiregrass" were "ongoing"

13

at the time DBI's truck ran over Mr. Hatton at the work site.

It is equally clear that Wiregrass could have no liability for the death of Mr. Hatton but for the operation of the DBI truck by the DBI driver. Thus, within the meaning of the State Auto policy, liability of Wiregrass "arises" from DBI's "ongoing operations" being performed on behalf of Wiregrass at the time the DBI truck ran over Mr. Hatton. This result is required under the well-established principle of Alabama insurance law that the terms of insurance policies are construed liberally to find coverage for the insured (here, Wiregrass) and strictly against the insurer (here, State Auto). See State Farm Fire & Casualty Co. v. Erwin, 393 So. 2d 996, 997 (Ala. 1981).

In its general liability policy, State Auto chose to incorporate the broad phrase "arising out of [DBI's] ongoing operations" as the test for extending coverage to additional insureds such as Wiregrass. Alabama, along with courts across the country have construed the phrase "arising out of" broadly in favor of insureds, as a basis to find coverage. For example, the Court of Appeals of Georgia construed the phrase "arising out of" as follows:

> "The term 'arising out of' does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury . . . . [A]lmost any causal connection or relationship will do . . . . 'The question to be answered is whether the injury "originated from," "had its origin in," "grew out of," or "flowed from" the use of the vehicle.'"

First Financial Ins. Co. v. Rainey, 394 S.E.2d 774, 775 (Ga. Ct. App. 1990), *aff'd in pertinent part and rev'd on other grounds*, 401 S.E.2d 490 (Ga. 1991). The former Fifth Circuit Court of Appeals Circuit interpreted the language "arising out of" broadly and found coverage under a Texas policy, relying on the persuasive authority of the Missouri Supreme Court:

We rest our holding broadly upon the view, fully developed by the Supreme Court

of Missouri, in <u>Schmidt v. Utilities Ins. Co.</u>, *supra*, (353 Mo. 213, 182 S.W.2d 185) that the words "arising out of the ownership, maintenance, or use of the (truck)' are not words of narrow and specific limitation, but are broad, general, and comprehensive terms effecting broad coverage . . .. <u>"Arising out of" are words of much broader significance than "caused by".</u> They are ordinarily understood to mean "'originating from' 'having its origin in,' 'growing out of' or 'flowing from,'" or in short, "incident to, or having connection with," . . ..

<u>Red Ball Motor Freight, Inc. v. Employers Mutual Liability Ins. Co.</u>, 189 F.2d 374, 378 (5th Cir. 1951) (emphasis added).

In <u>Taliaferro v. Progressive Specialty Ins. Co.</u>, 821 So. 2d 976 (Ala. 2001) the Alabama Supreme Court noted:

"the term 'arising out of the use' in liability policies has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'Flowing from.'"

<u>Id.</u> at 981 (quoting <u>Travelers Ins. Co. v. Aetna Casualty and Surety Co.</u>, 491 S.W.2d 363, at 365).

In <u>State Farm Fire & Casualty Co. v. Erwin</u>, 393 So. 2d 996 (Ala. 1981), the Alabama Supreme Court characterized coverage language employing the phrase "arising out of" as being "about as general and broad as could be written." <u>Id.</u> at 999. In that case the Alabama Supreme Court quoted <u>Blue Bird Body Company v. Ryder Truck Rental, Inc.</u>, 583 F.2d 717 (5th Cir. 1978) with approval as follows:

"Arising out of," as we said in <u>Red Ball Motor Freight v. Employers Mut. Liability Ins. Co.</u>, 5th Cir., 1951, 189 F.2d 374, 378, "are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, 'incident to, or having connection with,' the use of the car."

<u>Id.</u> at 998. Applying this rule, it is clear that the liability of Wiregrass, if any, for the death of Mr. Hatton had its origin in, or grew out of, or flowed from, or was connected to, the operation of the DBI's truck by the DBI's driver and, for this reason, coverage is to be construed broadly to extend

15

to Wiregrass.

    **C.**    **Wiregrass meets the policy definitions of "insured" under the State Auto Business Auto policy.**

The State Auto business auto policy defines "insured" in the following pertinent provisions:

    **1.**    **Who Is An Insured**
        The following are "insured":
        . . .
        **b.**    Anyone else while using with your [DBI's] permission a covered "auto" you [DBI's] own, hire or borrow [4]
          . . .
        **c.**    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(Exhibit F, bates number SA00124- SA00125).

    Wiregrass fully meets the policy definition of "insured" under both subsection (b) and (c). With respect to subsection (b), it is undisputed that the truck that hit and killed Mr. Hatton was "owned" by DBI and that, on the occasion of the accident, the truck was being driven by a DBI driver in the course of his employment, and with the permission of DBI.  It is also undisputed that the truck was being used by DBI and its insured driver to perform the work DBI agreed to do under its subcontract with Wiregrass.  The only possible question regarding application of this language to Wiregrass is whether Wiregrass was "using" the DBI vehicle.  However, applying the well-established rule of construction that coverage provisions are to be construed broadly to afford coverage and the rulings of Alabama courts that the term "use" is to be construed broadly for

---

    [4]Subsection (b) includes several exceptions, none of which are applicable under the facts of this case.

insurance purposes, Wiregrass is an insured. <u>State Farm Fire & Casualty Co. v. Erwin</u>, 393 So. 2d 996, 997 (Ala. 1981). Here insofar as the DBI's truck was being put to the purposes of Wiregrass, being "used" by Wiregrass to provide the asphalt necessary for its repaving project, in the broadest sense of the word, Wiregrass was "using" the vehicle.

Even if Wiregrass does not meet the subsection (b) policy definition of "insured," Wiregrass meets the subsection (c) definition which provides "insured" status to "anyone liable for the conduct of an insured. " Again the provision must be construed broadly to provide coverage. There can be no dispute that the DBI's employee who was driving the DBI's truck, at the Wiregrass work site, with the permission of DBI's, is an "insured" within the meaning of subsection (c). But for the actions of the DBI's insured driver in hitting and killing Mr. Hatton, Wiregrass would have no liability.

**IV.    Conclusion**

The subcontract between Wiregrass and DBI clearly meets the definition of an "insured contract" under the State Auto policies. Therefore, Travelers respectfully asks this Court to enter summary judgment in its favor, holding that the Wiregrass/DBI subcontract is an "insured contract." Additionally, Travelers respectfully requests that this Court grant summary judgment in its favor that Wiregrass is an insured under the State Auto policies. The doctrines of waiver and estoppel preclude State Auto from denying that Wiregrass is an additional insured because State Auto authorized its agent, Aronov Insurance, Inc. to issue certificates of insurance to include "additional insureds" in the coverage afforded by the State Auto policies. Further, Wiregrass meets the definition of insured under the State Auto policies.

17

Respectfully submitted,


s/ Carol Ann Smith
Carol Ann Smith, ASB-3485-T81C
Attorney for Defendant, The Travelers
Indemnity Company


OF COUNSEL:

SMITH & ELY, LLP
2000-A SouthBridge Parkway, Suite 405
Birmingham, Alabama 35209
(205) 802-2214

## CERTIFICATE OF SERVICE

    I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record by:

| | |
|---|---|
| _____ | Hand Delivery |
| _____ | U. S. Mail |
| _____ | Overnight Delivery |
| _____ | Facsimile |
| _____ | Certified Mail |
| ___X___ | E-filing |

on this the 8th day of June, 2006.


s/ Carol Ann Smith
OF COUNSEL


18

cc:   Christopher John Zulanas
      Michael Jon Douglas
      H. Spence Morano
      Friedman, Leak, Dazzio, Zulanas & Bowling, PC
      P.O. Box 43219
      Birmingham, AL 35242-3219

      C. Winston Sheehan, Jr.
      Jack Owen, Jr.
      Ball, Ball, Matthews & Novak, P.A.
      P.O. Box 2148
      Montgomery, AL 36102